## Case No. 13,305.

### STAPP et al. v. The SWALLOW.

### [1 Bond, 189.] [1]

### District Court, S. D. Ohio. June Term, 1858.

MARITIME LIEN — WAIVER — ADMIRALTY JURISDICTION—FOLLOWING STATE DECISIONS.

1. A person having a valid maritime lien on a steamboat, who proceeds to enforce it in a state court, and obtains judgment therefor, thereby waives his original lien, and occupies a footing of equality with other creditors having no maritime lien, who also proceeded under the state law.

[Distinguished in The Brothers Apap. 34 Fed. 352; The D. B. Steelman. 48 Fed. 582; The Cerro Gordo, 54 Fed. 393.]

2. In the construction of a state law, this court is bound to adopt the views of the supreme court of the state.

3. Claims not founded on maritime liens have no standing in this court in the exercise of its admiralty jurisdiction, and will be dismissed.

In admiralty.

Lincoln, Smith & Warnock, for libellants.
Dodd & Huston and Collins & Herron, for intervenors.

OPINION OF THE COURT. The original libel in this case was filed in the joint names of different persons, severally claiming for labor and services rendered the steamboat Swallow in various capacities. Others have intervened for wages due. There are also claims for supplies furnished and repairs to the boat. It is conceded that these are all claims importing maritime liens. By consent, a decree has been entered for the sale of the boat, and the application of the proceeds to the satisfaction of these liens. A sale has been made and the proceeds applied; and there is now a surplus in the registry applicable to a class of claimants having no maritime liens. The only question before the court relates to the distribution of the funds in the registry to these claimants. The aggregate amount of this class of claims exceeds the sum in the registry; and hence the duty of the court to decide how it shall be apportioned.

Among those now asserting claims to the surplus are some who had originally valid

[1] [Reported by Lewis H. Bond, Esq., and here reprinted by permission.]

maritime liens for supplies and repairs. Instead of enforcing their claims in this court, and insisting on their privilege of lien, they proceeded in a state court, under the watercraft law of Ohio, and have obtained judgments, which are now filed as the evidence of their claims in this court. It is insisted in the argument that these claims still retain their original character as maritime liens. and have priority over those not importing such lien, in which seizures have been made under state process.

In the case of Dudley v. The Superior [Case No. 4115], decided in this court some years since, this question was presented, though not argued; and the court held, that a claimant having an original maritime lien who, instead of asserting and enforcing his claim in the admiralty court, proceeded under the state water-craft law, thereby waived such lien, and occupied in this court a position of equality with those claiming liens solely by virtue of seizures under the state statute. I have no reason to doubt the correctness of the views indicated in the case referred to. It is true I have found no reported case in which this question has been under consideration in any other court. It is, however, clearly consonant with reason and the analogies of law, that if a party, having an undisputed maritime lien, voluntarily waives it by seeking another remedy, he can not be reinstated in his original right. His claim against the boat has passed into a judgment, pursuant to the state statute, and before a state magistrate or court, thereby losing wholly its original character as a maritime claim. It results, from this view, that this class of claimants can have no preference or priorities, except such as belong in common to all those who have made seizures under the water-craft law.

It is a question in this case, whether there is any priority of privilege among those claimants who have caused seizures to be made, under the statute referred to, dependent on the date of the seizure. On the one hand, it is insisted in argument that no preference is gained by a priority of time in the seizure, and that all creditors, having a lien by seizure, are entitled to a pro rata distribution of the proceeds. On the other hand, it is contended that priority of seizure imports a priority of lien; and that distribution must be made to the creditors of the boat in the precise order of the date of the seizures. It is conceded that the Ohio courts, including the supreme court, have uniformly recognized the rule just stated, in the construction and enforcement of the watercraft law. They hold that seizures made on the same day have an equality of lien, and those made on subsequent days are subordinate to those made at a prior date. It is true this construction is not in conformity with the principles which usually prevail in admiralty in adjusting the priorities of maritime liens. But its application to proceed-

ings under the water-craft law seems to be a necessary result of the principle settled by the state courts, and recognized by this court, that the statute gives no lien until there is an actual seizure of the debtor boat or craft. If the seizure alone creates the lien, it follows that the priorities of the creditors of the boat or craft must be determined, with reference to the date of seizure, subject to the modification before stated, that all seizures made on the same day are to be regarded as importing an equality of lien. If I doubted the justness and expediency of this principle of construction, I should regard it as my duty to give it my sanction, for the reason that it has been uniformly adopted by the courts of the state, in carrying out the statute referred to. It has settled a rule of property, depending on the construction of a state law; and, in accordance with the numerous decisions of the supreme court of the United States, is obligatory on the judges and tribunals of the Union.

There is another question in this case, as to the effect of the attachment prosecuted in the superior court of Cincinnati by James Millinger against Albert Culbertson, the owner of an interest of one-fourth in the steamboat Swallow. The attachment was served on December 5, 1857, and prior to any seizures under the water-craft statute. The nature of the debt claimed by the plaintiff in the attachment does not appear, but the commissioner reports that a judgment was obtained against the defendant in attachment for $6,-397. No sale was made under the judgment, and, being still unsatisfied, it is now set up in this court as a valid claim against the steamboat.

It is not controverted in argument, and I suppose there is no room to doubt, that the seizure by attachment of the interest of one-fourth in the boat. held by the defendant Culbertson, operated as an effected lien to the extent of that interest. I understand, that by the practice and decisions of the state courts, the seizure of a boat or other water-craft, by the process of attachment under the statute of Ohio, has the same effect as a seizure under the water-craft law; and when made on the same day, is held to have an equality of lien. If this proposition is maintainable—and I perceive no reason for doubting it—it follows that as the seizure, under the attachment by Millinger. was prior in date to any of the seizures under the water-craft law, he has priority of lien to the extent of the interest of Culbertson.

It is insisted, however, that granting such to have been the effect of the service of the attachment, the lien created was waived or relinquished by the plaintiff, and can not be set up by him. The facts relied on, in support of this position, as reported by the commissioner, are, that after the service of the attachment, an arrangement was made by the parties by which the boat was permitted to remain in the possession of the master, and to engage in its regular business, upon bond being given conditioned for the delivery of the boat, or the payment of the appraised value of the interest attached, to answer the judgment that might be obtained in favor of the plaintiff. Such a bond was given and accepted by the plaintiff; and the boat continued in the possession of the master, and was employed in its ordinary business until the 6th of February following the date of the service of the attachment, on which day it was delivered to the sheriff of Hamilton county to answer the claim of the plaintiff Millinger. This was before there was any seizure of the boat, either by process under the water-craft law or from this court. It also appears, though the fact is perhaps not material in the consideration of the point before the court, that nearly the whole of the indebtedness of the boat originated between the date of the service of the attachment and the delivery of the boat to the sheriff.

Do these facts warrant the legal conclusion that the plaintiff in the attachment waived or relinquished his rights accruing from the seizure of the boat, and that he can not now assert a priority of lien over those who subsequently proceeded under the water-craft law? I regret that this point was not more fully discussed in the argument. No authorities were referred to applicable to it; nor have I found any which throw any light on the question. My conviction is, however, strong that there is nothing in the facts stated, which can be viewed as equivalent to a waiver of the plaintiff's rights under the attachment. When the arrangement was made by which the master was allowed to run the boat, no proceedings had been instituted against it except the attachment by Millinger; nor could he be presumed to know there were other parties whose interests could be affected by the arrangement. In any view, it could not operate prejudicially to the interests of other creditors. On the contrary, as affording the means of earning something for the owners, it would increase their ability to pay the liabilities of the boat, and thus inure to the benefit of the creditors. In a word, it is impossible to conceive of any principle, in the facts referred to, impairing the lien of the plaintiff in attachment or any just ground of complaint by the other creditors.

The claim of Millinger, to the extent of Culbertson's interest of one-fourth, must be respected, and entitles him to a preference in the distribution of the fund in the registry over those whose seizures were subsequent, and for causes of action not implying a paramount admiralty lien.

If, however, it can be made to appear that the judgment obtained by the plaintiff in attachment was not for a bona fide debt, or if, on any satisfactory showing, the court can be satisfied there was fraud or unfair-

ness in the judgment or other proceedings in attachment, it would perhaps be competent to modify the final order of distribution. As the facts now appear to the court, the plaintiff in attachment, in a legal proceeding, obtained a judgment, which must be held to be valid until it shall be made clear that such is not its legal effect.

There is a class of libellants asserting claims not founded on maritime laws or on seizures under the state law, who clearly have no standing in this court in the exercise of its admiralty jurisdiction. and as to whom the libels will be dismissed at their costs.