THE D. B. STEELMAN.

*(District Court, E. D. Virginia. November 8, 1880.)*

1. MARITIME LIENS—VESSEL OWNED BY WIFE—FURNISHINGS BY HUSBAND.
    When a half interest in a vessel is owned by a married woman residing in the District of Columbia, where she is permitted by law to hold property in her separate right, free from the control and obligations of her husband, the husband is entitled to a lien on the vessel for funds and supplies furnished, and expenses incurred upon her, when his claim is proved in the usual way.

2. SAME—PARTIAL PAYMENTS—APPLICATION.
    When advances are made and lumber, etc., furnished to a vessel at various times during a period of about two months, but all during one stay in port, and as part of one transaction, and the account embraces some items which have the force of maritime liens, and others which do not, a cash payment will be applied in discharge of the latter, and the lien of the former will be preserved.

3. SAME—WAIVER OF LIEN—TAKING NOTES.
    The taking of notes payable in two, three, and four months, for advances made and materials furnished to a vessel, does not of itself operate as a waiver of the maritime lien.

4. SAME—TAKING MORTGAGE.
    Nor is the maritime lien waived by taking a mortgage on the vessel to secure such notes. *The Ann C. Pratt,* 1 Curt. 340, and *The Swallow,* 1 Bond, 189, distinguished.

5. SAME—LIENS UNDER STATUTE.
    Revised Code Md. art. 67, §§ 44-48, giving a lien on vessels used on Chesapeake bay on filing in the county court a verified statement of the claim, and providing that the act shall not entitle the claimant to preference over creditors secured by prior mortgage, abrogates the maritime lien for materials furnished in Maryland; and a lien secured under its provisions is subordinate to a claim secured by a prior mortgage on the vessel.

In Admiralty. Libel *in rem* for wages. Decree for libelants and claimants.

*Walke & Old,* for mortgagee.

*Sharp & Hughes, Ellis & Thom,* and *White & Garnett,* for petitioners.

HUGHES, J. The schooner D. B. Steelman, of Baltimore, Md., has been libeled in this court by three of her seamen; and sundry materialmen and other claimants have filed petitions setting out claims against the vessel. By general consent the vessel has been sold, and the proceeds paid into the registry for distribution. These are insufficient to meet all the claims. Of course the first charge against the fund is the costs of this suit. Next in order of priority are the claims of the seamen. They were hired by the month in Baltimore; and, as the vessel laid up in this port without finishing her voyage, they must be paid their wages for the time claimed, and $1.50 each for their passage back to Baltimore.

The vessel was owned by J. Hexter and his sister, Mrs. Silverberg. Under the laws of the District of Columbia, where Mrs. Silverberg lives, married women may acquire and hold personal and real property in separate right, free from the control or obligations of their husbands. Her half of this vessel is thus held and owned by Mrs. Silverberg, as is shown by the schooner's custom-house papers, issued by the collector of Baltimore. One of the claimants by petition in this case is Silverberg,

who claims expenses incurred in repairs upon this vessel, and in funds and supplies furnished her. I see no reason why this claim should be denied. It is proved in the usual way, and is admitted to be just and correct by the other half-owner, Mr. Hexter. It cannot therefore be invalidated by the mere fact that the claimant is the husband of a half-owner. It must be paid *pari passu* with other claims of like dignity. It seems that the petitioner McCullough, in March and April last, furnished lumber and money for repairs upon the vessel to the amount of about $635, of which he received $300 in cash, and took notes at 60 days, 90 days, and 4 months for the balance. The items making up the total of the account which he files with his petition bear date from February 10, 1880, to April 5; and it is claimed by adverse counsel that the payment of $300 made to him by Hexter, an owner, should be applied to the discharge of the earliest of those items. This would leave among the items of later date some which have not the force of maritime liens. There was but one refitting and repairing and supplying of this vessel by McCullough, which was during a single stay of the vessel in this port, and his advances to her were made with reference to the total charges incurred on that occasion. The cash payment which he received must therefore be presumed to have been paid and received in liquidation *pro tanto*, first, of the items which had not the force of maritime liens, and then of those which had. Any other rule of application would be contrary to reason, and be grossly inequitable.

Besides executing three notes for the balance of $335 due upon McCullough's advance, Hexter executed a mortgage upon his half of the vessel to secure the amount of the notes. The principal question arising in the present case is whether McCullough, by taking the notes, and especially by also taking this mortgage, waived his maritime lien upon the vessel, and thus falls behind the other material-men in the order of payment. I think it may be assumed as settled law that the taking of a note by a material-man in evidence of his claim for supplies, for such a short time as 60, 90, or 120 days does not of itself amount to a waiver of his maritime lien upon the vessel supplied. *The Nestor*, 1 Sum. 73. The only open question is whether the taking of a mortgage on the vessel securing this note is a waiver. It is settled law that a mortgage is to be treated, not as the debt, but as a mere incident of it; not as the principal thing, but as the mere accessory. 1 Jones, Mortg. § 11; *Carpenter* v. *Longan*, 16 Wall. 271; and see 22 Alb. Law J. 377. If a mortgage be thus but an accessory and incident of the note, and the note itself does not displace the maritime lien upon the vessel, then the mere fact of taking a mortgage does not operate as a waiver of the maritime lien. If, however, the taking of the mortgage be attended by acts inconsistent with the lien, or prejudicial to other maritime creditors, (for instance, if the credit given by it be so long as to make the claim it is intended to secure stale, in the sense of the maritime law,) or if the execution of the mortgage be in manner such as to make it conflict with the rights of maritime creditors whose claims are of equal dignity with that secured by the mortgage, then it would be inequitable to allow to the mortgagee

the benefit of two remedies against the ship, and his taking the mortgage would be held as waiving the maritime lien.

I see nothing in conflict with this view in the cases of *The Ann C. Pratt*, 1 Curt. 340, and *The Swallow*, 1 Bond, 189, cited by adverse counsel. In the case of *The Ann C. Pratt*, which belonged to Frankfort, Me., there was a loan of money on a bottomry bond while the vessel was at St. Thomas, during a voyage to the West Indies. It was in proof that the lender was unwilling to furnish funds except on a bottomry bond, or to deal upon any other footing than a contract of bottomry, and that both parties contracted solely with reference to such a bond. The lender of money upon a bottomry bond takes a very different risk from that of a material-man who furnishes supplies, and he charges for this risk a very high remuneration, so that the lien of a bottomry bond is in terms and in its character so inconsistent with the ordinary maritime lien as to operate as a waiver and displacement of the maritime lien. The decision of Justice CURTIS in the case of *The Ann C. Pratt* is based on this difference, and exclusively on this difference under the express contract of the parties in the case; and it is to be remarked that, in rendering this decision on special grounds, Mr. Justice CURTIS reversed Judge WARE, one of the soundest maritime jurists known to the American admiralty judicature. The case of *The Swallow*, 1 Bond, 189, was decided in Ohio, where the statute law of the state gave to material-men a remedy by attachment in the state courts against vessels which they credited. The state law provided a different order of priorities in these suits from that of the admiralty law for claims against vessels. In the case of *The Swallow*, several creditors had pursued their remedy against the vessel in the state court to judgment, and had obtained by that means all that could be awarded them under the state law by the state court. There was afterwards a libel in admiralty brought by different claimants against the same vessel. The fund arising from the sale of the vessel under the admiralty decree was sufficient to pay off the claims of the libelants, and to leave a surplus for distribution among claimants, some of whom claimed, and some of whom could not claim, maritime liens. Among those who asserted claims by maritime liens to the surplus were some who had originally valid maritime liens for supplies and repairs, but who, instead of enforcing their claims in the admiralty court, and insisting on their maritime liens, had proceeded in the state court under the water-craft law of the state of Ohio, and obtained judgment in that forum. It was held that the pursuit of a maritime claim in a state court was a waiver of the maritime lien; that this lien, having passed into the judgment of the state court, had been thereby waived and lost, it being clearly consonant with reason and the analogies of the law that, if a party having an undisputed maritime lien voluntarily waives it by seeking another remedy incompatible with it, he cannot be reinstated in his original right. *The Superior*, Newb. Adm. 176, which was cited by the court.

The case at bar is quite different in character from that of *The Ann C. Pratt* and *The Swallow*. It is not the case of libel on a bottomry bond.

It is not the case of a voluntary abandonment of the remedy in admiralty for a resort to the inconsistent and different remedy of attachment and personal judgment in a state court. Nor in this case has there been a sleeping by the claimant upon his mortgage so long as to allow his claim to grow stale, to the prejudice of the rights of maritime lien creditors whose claims are fresh. I hold that the mere taking of a mortgage is not of itself a waiver of the maritime lien, and that there is nothing in this mortgage, or the conduct of the mortgagee, to displace or waive the maritime lien of McCullough for advances and materials furnished to the vessel.

As the schooner belongs to Maryland, the claim of Joseph H. Johnson, a citizen there, for repairs done in that state, is not a lien, except under the terms of the law of Maryland relating to that subject, which is as follows, (Rev. Code Md. art. 67, § 44; Act 1865, p. 119:)

"All boats or vessels of any kind whatsoever belonging in this state, or used or intended to be used on the waters of the Chesapeake bay or its tributaries, the Chesapeake and Ohio canal, and other waters of this state, shall be subject to a lien, and bound for the payment thereof as preferred debts, for all debts due to boat-builders, mechanics, merchants, farmers, or other persons, from the owner, master, or captains, or other agents, of such boats or vessels, for materials furnished or work done in the building, repairing, or equipping the same."

Section 45. "No person shall be entitled to a lien unless he shall, within six months from the commencement of the building, repairing, equipping, or refitting of such boat or vessel, deliver to the clerk of the circuit court of the county where such building, repairing, etc., was done, or the superior court, if done in the city of Baltimore, an account or statement, certified by the oath of the claimant, * * * setting forth the names of the claimant and debtor, and. if the debt was not contracted by the owner, but by his agent, the name of such agent, the name or other certain description of the boat or vessel, and the place where built, repaired, etc., and the particulars or items of the claim or debt."

Section 47. "Such boat or vessel, against which an account or statement shall be filed under this article, shall be subject to a lien for the debt and costs justly chargeable against it for two years from the day on which the account or statement shall be filed, and no longer."

Section 48. "The lien given by this article shall not entitle the claimant to preference over creditors or claimants secured by mortgage or bill of sale properly executed and recorded before the claim to be secured by such lien shall have accrued."

The claim of Johnson, as to the half interest in the vessel upon which McCullough has a mortgage, ranks under this law after or behind the mortgage; but, as to the half interest in the vessel on which there is no mortgage it must be paid *pari passu* with the claims of other material-men, including McCullough. This difference in the manner in which the Maryland claim ranks, as to the different half interests in the schooner, makes it necessary that the commissioner shall divide each of the claims of the material-men into two parts. As to the first half of these several claims, (the first half of the Maryland claim being wholly displaced by the mortgage,) they must be paid the percentage which half the fund subject to distribution will permit; I believe, about 95 per cent. As to

the other halves of these several claims, including half of the Maryland claim; they and it are to be paid in the percentage which the half fund for distribution bears to the aggregate amount of them; I believe, about .74 per cent. I will sign a decree allowing the amounts indicated.