CUDDY et al. v. CLEMENT et al.

(Circuit Court of Appeals, First Circuit. April 10, 1902.)

No. 393.

MARITIME LIEN—SUPPLIES—CONTRACT WITH OWNER.

The presumption that no maritime lien arises for supplies furnished on the order of the owner of a vessel is not overcome merely by proof of an undisclosed belief or understanding on his part when the contract was made that the person furnishing such supplies would be entitled to a lien.[1]

Appeal from the Circuit Court of the United States for the District of Massachusetts.

On petition for leave to reopen case in the circuit court.

Harvey D. Goulder (Carver & Blodgett, on the brief), for appellants.

Louis Hasbrouck, for appellees.

Before PUTNAM, Circuit Judge, and WEBB and ALDRICH, District Judges.

PUTNAM, Circuit Judge. Judgment was entered in this case on January 16, 1902, in accordance with our opinion passed down that day. 113 Fed. 454. On February 13, 1902, the appellants, by leave of court, filed a petition which we must regard as a petition for leave to reopen the case in the circuit court on the ground of newly discovered proofs, conforming the proceedings to the practice fully stated by us in Re Gamewell Fire Alarm Tel. Co., 20 C. C. A. 111, 73 Fed. 908. It will appear that, in accordance with the practice thus stated, we can finally dispose of the petition.

The original case was fully explained in our former opinion; but, in order that the merits of the present petition may be correctly understood, it is advisable for us to repeat some details. The appeal arose out of a claim for maritime liens on certain steamers to which coal had been furnished, which coal, in the opinion of the majority of the court, was so furnished in pursuance of a formal contract made with the corporation which was their owner. The contract was signed in behalf of that corporation by F. W. Baldwin, styling himself "Manager." The record also states that he was the treasurer, but it contains nothing to show his powers, beyond the fact that the parties conceded that he was authorized to sign the contract. How far, beyond the execution thereof, he could bind the corporation, if at all, we have not been advised.

The pith of our opinion of January 16th was to the effect—First, that not only was there no evidence that there was any agreed lien, but that the circumstances disproved its existence; and, second, that there was no evidence of any maritime necessity for credit to the vessels. Either of these findings was sufficient to maintain the con-

[1] Maritime liens for supplies and services, see note to The George Dumois, 15 C. C. A. 679.

clusion which we reached, adverse to the appellants. They now claim that, since our judgment was rendered on the appeal, in a casual conversation between F. W. Baldwin and one of the appellants at a hotel in New York City, Baldwin stated that, in making the contract referred to, "he did so in the belief, and with the understanding, purpose, and expectation," that, for any fuel supplied, the appellants would have "an undoubted right to look to each steamer, as well as to the company," "and that he accepted and approved the vouchers charging the steamers with like understanding." The same conversation is repeated in the record with somewhat different phraseology, but substantially to the same effect.

The affidavits attached to the petition are to the effect that, before the case was heard in the court below, a solicitor for the petitioners applied to Mr. Baldwin for "the facts connected" with the claim, and that Mr. Baldwin refused to give him any information on the subject. It does not appear what class of facts the solicitor was endeavoring to obtain from Mr. Baldwin; but, certainly, if it related to the latter's intent and belief at the time the contract was signed, it was an easy matter for the solicitor to have compelled him to testify, and thus to have ascertained what they were. Therefore the record lacks proper specific facts leading up to a proposition that prior to the trial in the court below the petitioners made any effort to ascertain the mental condition of Mr. Baldwin in connection with the contract, as now said to have been stated in the conversation at the New York hotel. If this mental condition was of substantial importance, it is apparent that it would have been almost the first thing that the appellants' solicitor should have sought for; and, for this reason, there seems to be a lack of diligence, such as is fatal to applications of the kind now before us.

Passing by the question whether Mr. Baldwin had any power to bind the corporation by an undisclosed mental condition, or by anything beyond the execution of the contract referred to; also passing by the fact that the mere testimony of any person as to his undisclosed mental condition at a prior time would be of too feeble character to sustain the burden which, according to our opinion of January 16th, rests on the appellants (Insurance Co. v. Hillmon, 145 U. S. 285, 295, 12 Sup. Ct. 909, 36 L. Ed. 706); and also passing by the proposition that the new proof offered is ineffectual with reference to the fact that the case does not disclose a maritime necessity for credit to the steamers, which alone is fatal to the appeal,— we are of the opinion that the new evidence offered is inconclusive on the issue to which it is said to appertain.

It is true that on a limited class of issues, especially with reference to certain criminal proceedings, and also cases where actual knowledge is important, the mental condition of only one individual may be essential, and may be proved by his uncorroborated testimony. Wallace v. U. S., 162 U. S. 466, 477, 16 Sup. Ct. 859, 40 L. Ed. 1039; Steph. Dig. Ev. (2d Am. Ed.) 176, notes. But it will readily appear that the case at bar is not among the classes referred to. In our opinion of January 16th, we quoted from The Iris, 40

C. C. A. 301, 100 Fed. 104, to the effect that no lien for supplies is presumed to arise on a contract made by the owner of a vessel, and that "proof is required that the minds of the parties to the contract met on a common understanding that such a lien should be created." We added, "That understanding may, of course, be inferred from facts as well as from express language, as is ordinarily true with reference to all alleged contracts where it must be shown that the minds met." But there was nothing said which suggested that a lien can be raised by the mere undisclosed mental condition of one or both of the parties to a written contract, when such lien is not fairly and reasonably within its terms; nor was there anything which waived the general rule that a mere mental condition is of no value in law with reference to a contract, unless it is expressed by, or may be inferred from, visible acts and circumstances. How can the minds of two parties be said to have met, merely because one of them entertained an undisclosed mental condition? While, under exceptional circumstances, as we have said, an undisclosed mental state may be the connecting link to complete a case or a defense, yet that, for all the ordinary purposes of the law, both bodily and mental feelings are ordinarily shown only by visible acts or circumstances, was sufficiently indicated by the explanation of the usual course of proof in reference thereto in Insurance Co. v. Hillmon, ubi supra. It is said at page 295, 145 U. S., and page 912, 12 Sup. Ct., 36 L. Ed. 706, that "a man's state of mind or feeling can only be manifested to others by countenance, attitude, or gesture, or by sounds or words, spoken or written." Our opinion of January 16th, in connection with The Iris, makes it clear that, in order that there could be liens in either case, there must have been a contract therefor, however it might be proved; that is, something binding in law the parties to each other. Such "something" cannot arise from a "mere state of mind or feeling" not "manifested to others." Consequently the new proofs now offered by the appellants, in connection with everything else which the record shows, and independently of the other difficulties to which we have referred, would fail to show that the minds of the parties "met" in the way in which they must meet to overcome the presumption that no maritime lien arises for supplies furnished on the order of the owner of the vessel against which the lien is claimed.

The petition filed by the appellants on February 13, 1902, is denied, and the mandate will issue forthwith.

WEBB, District Judge, took no part in this decision.