## THE EASBY.

(District Court, D. Maryland. December 31, 1912.)

1. MARITIME LIENS (§ 38*)—LIENS GIVEN BY STATE STATUTE—ENFORCEMENT BY ADMIRALTY COURTS.

While a court of admiralty will recognize and enforce a lien given by a state statute which accrued prior to the enactment of Act June 23, 1910, c. 373, 36 Stat. 604 (U. S. Comp. St. Supp. 1911, p. 1191), superseding such statutes, in determining questions of priority, it will give such lien the rank to which it is entitled by the principles of the maritime law.

[Ed. Note.—For other cases, see Maritime Liens, Cent. Dig. §§ 71–77; Dec. Dig. § 38.*

Jurisdiction of admiralty to enforce liens under state laws, see note to The Electron, 21 C. C. A. 21.]

2. MARITIME LIENS (§ 38*)—PRIORITIES—LIEN FOR REPAIRS AND MORTGAGE.

Liens for repairs or supplies furnished to a vessel, properly secured under a state statute or given by Act June 23, 1910, c. 373, 36 Stat. 604 (U. S. Comp. St. Supp. 1911, p. 1191), are entitled to precedence over a prior mortgage.

[Ed. Note.—For other cases, see Maritime Liens, Cent. Dig. §§ 71–77; Dec. Dig. § 38.*

Maritime liens created by state laws, see note to The Electron, 21 C. C. A. 21.]

In Admiralty. Suit to enforce liens for repairs and supplies against the steam-tug Easby. Decree for libelants and intervening lien claimants, giving them priority over a mortgage.

W. Thomas Kemp, of Baltimore, Md., for mortgagee.

J. Walter Lord, Joseph N. Ulman, and Harry N. Abercrombie, all of Baltimore, Md., for intervening petitioners.

Gaylord Lee Clark, of Baltimore, Md., for steam tug Easby.

ROSE, District Judge. The libelants had made repairs to the steam tug Easby. Their bill was not paid. They libeled the tug. It was sold by order of the court. Its net proceeds amount to $1,773.97. They are in the registry of the court. Other persons have filed intervening libels for repairs, materials, or supplies made or furnished by them to the tug. The aggregate amount of the claim of the original libelants, and the claims of all intervening libelants having bills of a like character, is $929.89. There is no question made that these supplies, repairs, and materials were needed for the tug; that they were furnished in her home port upon the order of the owners or of their duly authorized agents. The amount due for them is not in dispute. The controversy is as to whether they are entitled to priority in distribution of the fund in the registry over a mortgage

claim of the Maryland National Bank, which has also intervened. The mortgage was made April 3, 1906. It was intended to secure the pay-, ment four months after date of a promissory note for $5,000. The mortgage was duly recorded at the Baltimore customhouse. Some payments have been made upon it, but there ·is still a balance of $3,371.11 due upon it.

The contentions of the mortgagee may be briefly summarized as follows:

First. The mortgage was made and recorded more than four years before the passage of Act June 23, 1910, c. 373, 36 Statutes at Large, 604 (U. S. Comp. St. Supp. 1911, p. 1191).

Second. Before that enactment, the supply, material, and repair claimants could not have maintained libels in rem against the tug had it not been for the provisions of the state statutes. Maryland Code Public General Laws, art. 63, §§ 43–52.

Third. By the express terms of that statute (Code, art. 63, § 47) the lien given by it did not entitle the claimant to preference over creditors or claimants secured by mortgage or bill of sale properly executed and recorded before the claim to be secured by such lien had accrued.

Fourth. That all the claims for supplies, etc., against the Easby accrued long subsequently to the recording of the mortgage. In this connection it is important to notice that the earliest item in the bills of any of the supply claimants bears date nearly or quite eighteen months after the passage of Act June 23, 1910.

Fifth. That before the passage of that act the lien claimants would have been postponed to the mortgagee. The Marcelia Ann (C. C.) 34 Fed. 142; The D. B. Steelman (D. C.) 48 Fed. 580.

Sixth. That act is not retroactive (The Edna [D. C.] 185 Fed. 206; The Princess [D. C.] 185 Fed. 218), and in consequence these lien claims cannot be preferred to that of the mortgagee.

That the first four of the above-stated propositions are sound need not be questioned.

[1] To the fifth I cannot assent. It is true that the authorities cited for it by the mortgagee are both directly in point and fully sustain it. Both of them, however, were decided before the Supreme Court handed down its opinion in The J. E. Rumbell, 148 U. S. 1, 13 Sup. Ct. 498, 37 L. Ed. 345. In neither of them was reference made to the earlier case of The Guiding Star (C. C.) 18 Fed. 263, in which a very similar question, if not precisely the same, was considered by Mr. Justice Stanley Matthews on circuit. In that case the home port of the vessel was Cincinnati. Supplies had been there furnished· it. Without the state statute the materialmen had no lien upon the vessel. The Supreme Court of Ohio had construed the state statute, giving the lien as if it had contained the language found in that of Maryland, and upon which the mortgagee here relies. Such construction was,· of course, binding on the federal court. Nevertheless Justice Matthews, with the concurrence of Judge Baxter, held that:

"Admitting this construction to be the one adopted by the state courts in determining priorities between liens given by the statutes to secure liabilities

other than those arising upon maritime contracts, it would not on that account be applicable in admiralty courts in enforcing liens given by it to secure maritime liabilities."

He pointed out that:

"In enforcing the statutory lien in maritime causes, admiralty courts do not adopt the statute itself, or the construction placed upon it by courts of common law or of equity, when they apply it. Everything required by the statute as a condition on which the lien arises and vests must, of course, be regarded by courts of admiralty, for they can only act in enforcing a lien when the statute has, according to its terms, conferred it; but beyond that the statute, as such, does not furnish the rule for governing the decision of the cause in admiralty as between conflicting claims and liens. The maritime law treats the lien, because conferred upon a maritime contract by the statute, as if it had been conferred by itself, and consequently upon the same footing as all maritime liens; the order of payment between them being determinable upon its own principles. * * * It follows that the claims for materials and supplies, and for insurance, which have arisen at the home port, for which a lien is given by the local law, must be placed upon the same footing in the distribution with similar claims arising in foreign ports."

Consequently the lien claimants were held entitled to priority over the mortgagee.

This case was cited with approval by the Supreme Court in The J. E. Rumbell, supra. The Supreme Court itself expressly said:

"It would seem to follow that any priority given by the statutes of a state or by decisions at common law or in equity is immaterial, and that the admiralty courts of the United States enforcing the lien because it is maritime in its nature arising upon a maritime contract must give it the rank to which it is entitled by the principles of the maritime and admiralty law."

[2] Since the decision in the Rumbell Case, and prior to the passage of Act June 23, 1910, it has been the practice of this court to award Maryland materialmen who have under the state law properly secured liens against Maryland vessels priority over the claims of persons holding mortgages upon such vessels. But if prior to June, 1910, the law had been otherwise, is the sixth proposition of the mortgagee sustainable? In The Edna and in The Princess, supra, the question before the court was whether persons who had furnished supplies before the passage of the act could avail themselves of its privileges. It was held that they could not. It is not easy to see how any other conclusion could have been reached. It is not necessary to express any opinion as to whether the construction placed by Judge Toulmin in The Edna upon the language of the fourth section of the act is correct. It is at least possible that when Congress said that "this act shall not be construed to affect the rules of law now existing either in regard to the right to proceed against a vessel for advances or in regard to laches in the enforcement of liens on vessels, or in regard to the priority or rank of liens, or in regard to the right to proceed in personam," it had not in mind anything with reference to the retroactive or prospective operation of the act. Apparently it intended to make plain that it had not changed the law either for the past or for the future in the respects mentioned in the language above quoted.

In this case we are not concerned with lien claims which accrued

prior to the passage of the act. When it became law, the mortgage had been in default for nearly four years. The mortgagee was entitled to take immediate possession of the tug. The owner retained the management of the vessel at the port of supply by the leave and license of the mortgagee. To hold that under such circumstances the supply claimants are entitled to the benefit of the statute, and that it confers upon them 'rights superior to that of the mortgagee, is not to give a retroactive effect to that enactment.

A decree may be drawn directing that after costs are paid the claims of the·libelants, original or intervening, who have made repairs or furnished materials or supplies shall be paid in full, and that·the balance remaining shall go to the mortgagee.