## THE LUCILLE.

(District Court, S. D. Alabama, S. D.    September 24, 1913.)

No. 1,389.

MARITIME LIENS (§ 43*)—LIENS FOR REPAIRS AND SUPPLIES—WAIVER.

Act June 23, 1910, c. 373, § 1, 36 Stat. 604 (U. S. Comp. St. Supp. 1911, p. 1192), giving a maritime lien on vessels for repairs, supplies, etc., furnished on order of the owner or of a person authorized by him, and providing that it shall not be necessary to allege or prove that credit was given to the vessel, does not bar proof that credit was in fact given to the owner and not to the vessel, and such proof may be of an express agreement or of circumstances from which such agreement may be inferred; and since section 4 provides that the act shall not be construed to prevent a waiver of the right to a lien or to change the rules of law with regard to laches, the charging of repairs or supplies to the owner instead of the vessel, and the taking of his notes therefor running several months, secured by mortgage on the vessel, will be held a waiver of the statutory lien as against the holders of liens subsequently acquired.

[Ed. Note.—For other cases, see Maritime Liens, Cent. Dig. § 82; Dec. Dig. § 43.*]

In Admiralty. Suit by Gust Nelson and others against the launch Lucille. On exceptions to report of special commissioner on claims of the S. M. Jones Company and the Texas Company. Report confirmed.

The launch Lucille was libeled on March 18, 1913, by one Nelson for wages, and a number of intervening libels were filed, among which were those of the S. M. Jones Company, for machinery, and of the Texas Company, for gasoline, oil, etc., furnished said launch; both claiming a lien for materials, supplies, etc. The launch having been sold and the purchase money paid into court, a reference was made to a commissioner to ascertain and report the liens in amount and priority to be paid out of this fund. On the hearing, the S. M. Jones Company, in support of their libel, introduced in evidence certain accounts made out against one John A. Welch, who was shown to have been the owner of said launch, for machinery furnished the Lucille on his order, and produced a mortgage given to them on March 28, 1911, by said Welch on the launch, which had been duly recorded, to secure 12 notes given by said Welch to cover the accounts in question, 11 of which having been paid by Welch, there remained the last note for $1,111.18, due March 28, 1912, with 6 per cent. interest, unpaid and for which they sought to establish a materialman's lien on the fund derived from the sale of the launch. There was no question as to the receipt of the machinery by the Lucille. The commissioner denied them such lien on the ground that, by taking such notes and mortgage to secure balance due for materials and supplies, extending credit for a period of 12 months, and not filing their libel until April 23, 1913, they waived their maritime lien or postponed it as to subsequently accruing liens, and that they were entitled only to such lien as the mortgage gave them. To this finding they except.

The Texas Company, to support their libel, introduced an account against John A. Welch, the testimony showing that the gasoline and oil furnished to the Lucille, as well as to another launch, the Irma, owned by Welch, was all

charged on their books to the one account, that of **John A. Welch**; that Welch made payments on this account from time to time out of a common fund derived from the earnings of the two boats, commingling the moneys received and disbursed in such manner so that the amounts as to each vessel could not be accurately determined. Welch testified, however, that on a certain date, September 19, 1912, the balance at that time due by him to the Texas Company be considered as due and owing for account of supplies furnished to the Lucille, for the reason that the Irma had been showing a profit in her operations and the Lucille had not, and that he therefore considered or concluded that the one boat had discharged so much of the indebtedness charged against him on the Texas Company's books as was for her supplies, and that the balance was properly for the Lucille's supplies. There further developed that at this time, September 19, 1912, John A. Welch gave to the Texas Company five notes, signed by himself, in payment of this balance, due in May, June, July, August, and September, respectively, and bearing 8 per cent. interest: said notes being secured by second mortgage given by Welch on the Lucille, and duly recorded. The Texas Company also introduced certain receipts from the master of the Lucille and others authorized to receipt for supplies, showing the delivery of gasoline and oil to said vessel from December 1, 1911, to July 9, 1912, which (as found by the commissioner) cover the supplies (with some deductions where the proof failed), for which the notes and mortgage were given.

Upon objections by proctors for other interveners to the allowance of this claim as an admiralty lien for supplies, on the grounds that the Texas Company had waived such lien by taking the notes and mortgage, further, that the supplies were delivered on credit extended solely to the owner, John A. Welch, and on other objections, the commissioner found that said company had waived their lien, and had such lien only as the mortgage was entitled to. To this finding, the Texas Company except.

Leigh & Chamberlain and Hanaw & Pillans, all of Mobile, Ala., for S. M. Jones Co.

Hanaw & Pillans, of Mobile, Ala., for Texas Co.

Rickarby & Austill, of Mobile, Ala., for Gulf Dry Dock Co.

Wm. G. Caffey and Gregory L. & H. T. Smith, all of Mobile, Ala., opposed.

TOULMIN, District Judge. Prior to the enactment of the Act of June 23, 1910, c. 373, 36 Stat. 604, there was no lien given by the general maritime law on a domestic vessel for repairs, supplies, or other necessaries furnished her in her home port. But that act created a new legal liability giving such lien. U. S. Comp. St. Supp. 1911, p. 1192.

No lien was given by the general maritime law to materialmen for supplies, etc., furnished a vessel in her home port, because in that case, according to the generally accepted theory, the presumption was that credit was given to the owner and not to the ship itself.

When necessary repairs, supplies, etc., were furnished to a vessel in a foreign port on the order of the master, nothing else appearing, there was a presumption that they were furnished on the credit of the vessel, and the maritime law gave a lien on the vessel. On the other hand, where necessary repairs, supplies, etc., were furnished to a vessel in a foreign port on the direct order of the owner who is present, there is a presumption that the repairs were furnished, not on the credit of the vessel, but solely on that of the owner. But this presumption

is not conclusive. It may be rebutted by circumstances. The Ella (D. C.) 84 Fed. 471, 478, 481.

The act of June 23, 1910, provides that any person furnishing repairs, supplies, or other necessaries to a vessel, whether foreign or domestic, shall have a maritime lien on the vessel.

"All it requires is that whatever was furnished should have been furnished on the order of the owner, or some one duly authorized by him; and it provides that, in order that a lien therefor may be enforced in rem, it shall not be necessary to allege or prove that credit was given to the vessel." Ely v. Murray & Tregurtha Co., 200 Fed. 371, 118 C. C. A. 523.

The First Circuit Court of Appeals, in considering this statute, in the case last cited, said:

"Of course, this does not bar proof that whatever was furnished was furnished on the mere credit of the owner, and in no sense on the credit of the vessel." 200 Fed. 371, 118 C. C. A. 523.

An agreement or understanding as to whom credit was given may be inferred from acts and circumstances as well as from express language, as is ordinarily true with reference to all alleged contracts where it must be shown that the minds of the parties met. Cuddy v. Clement, 115 Fed. 301, 303, 53 C. C. A. 94.

The existence of an agreement may be shown by either direct or circumstantial evidence; and an express agreement is none less express because circumstantial evidence is resorted to for its establishment.

The said act also provides:

"That nothing in this act shall be construed to prevent a furnisher of repairs, supplies, or other necessaries from waiving his right to a lien at any time, by agreement or otherwise, and this act shall not be construed to affect the rules of law now existing, either * * * in regard to laches in the enforcement of liens on vessels, or in regard to the priority or rank of liens, or in regard to the right to proceed in personam."

"It is settled law that a mortgage is to be treated, not as a debt, but as a mere incident of it; not as the principal thing, but as the mere accessory. * * * If a mortgage be thus but an accessory and incident of the note, and the note itself does not displace the maritime lien upon the vessel, then the mere fact of taking a mortgage does not operate as a waiver of the maritime lien. If, however, the taking of the mortgage be attended by acts inconsistent with the lien, or prejudicial to other maritime creditors, * * * or if the execution of the mortgage be in manner such as to make it conflict with the rights of maritime creditors whose claims are of equal dignity with that secured by the mortgage, then it would be inequitable to allow to the mortgagee the benefit of two remedies against the ship, and his taking the mortgage would be held as waiving the maritime lien." The D. B. Steelman (D. C.) 48 Fed. 580, 581.

In the Lottawanna, 21 Wall. 558, 22 L. Ed. 654, it was held that rule 12 adopted by the Supreme Court in 1872 that "In all suits by materialmen, for supplies, or repairs, or other necessaries, * * * the libelant may proceed against the ship and freight in rem, or against the master and owner alone in personam," was to render rule 12 of 1844 general in its terms, giving to materialmen in all cases their option to proceed either in rem or in personam.

If the parties interested in this proceeding had the option to proceed either in rem or in personam, they unquestionably had the option to give credit to the owner or to the vessel, and if they gave credit

to the owner they thereby waived their right to a lien on the vessel. There is no law to prevent such waiver. Act June 23, 1910, § 4; The D. B. Steelman (D. C.) 48 Fed. 580, 581.

It is contended by the counsel opposing the exceptions that it clearly appears from the evidence in the case that the libelants gave credit to the owner for the supplies furnished, and that they thereby waived their right to a lien on the vessel. From a careful examination and consideration of the evidence, my conclusion is that the contention is well made.

The ruling of the commissioner is, in my opinion, correct, and his report is accordingly in all things confirmed. It is so ordered.