## WASHINGTON IRON WORKS v. THE ORIENT.

## SAME v. THE BERLIN.

(First Division.  Ketchikan.  December 19, 1915.)

Nos. 209–KA, 210–KA.

1. MARITIME LIENS ☞27—ADMIRALTY.

Libelant sold certain winches and other maritime stores to a general dealer and ship repairer on open account, who sold the same in due course of his business and put them on the vessels libeled, where they were paid for by the owners. The libelant filed a lien on the vessels for the value of the winches. *Held*, the libelant having sold the winches to their customer, a general dealer, on open account, and the latter having furnished the same to the owners of the vessels libeled, and having been paid therefor, there was never any lien reserved to the libelant therefor. Libels dismissed.

2. MARITIME LIENS ☞65—STATUTORY RULE.

Act Cong. June 23, 1910, c. 373, 36 Stat. 604 (U. S. Comp. St. 1916, §§ 7783–7787), does away with the presumption heretofore obtaining that "repairs, supplies, or other necessaries" furnished to a vessel in its home port were not furnished on the credit of the vessel, and in substance establishes the presumption that they were furnished on the credit of the vessel; but that statutory presumption does not bar the owner of the libeled vessel from proving affirmatively that the articles were sold to some third person and were not furnished either on his credit or the credit of the vessel.

These cases, involving substantially the same pleadings and evidence, were consolidated for purposes of trial. The actions are suits in admiralty to establish and foreclose an alleged maritime lien. They are for the price of two winches, which were by libelants sold and delivered to Carlson Bros., a firm of ship builders and repairers, and were by them placed upon and used and are a part of the vessels aforesaid. The Lindenberger Packing Company claims to be the owner of the vessels. Libelants seek to make the vessels liable for the price of the winches.

Chas. H. Cosgrove, of Ketchikan, for libelant.

Chas. E. Ingersoll, of Valdez, for respondents.

JENNINGS, District Judge.  The act of June 23, 1910 (Fed. Stats. Ann. Supp. 1912, p. 352), referred to in the com-

plaint, made a drastic change in the law of maritime liens. The act does away with the presumption heretofore obtaining that "repairs, supplies, or other necessaries" furnished to a vessel in its home port were not furnished on the credit of the vessel. The act declares in substance and effect that the presumption shall be the other way, and that it shall not be necessary to allege or prove that such "repairs, supplies, or other necessaries" were furnished on the credit of the vessel; but that is far from saying that the owner of the libeled vessel may not prove affirmatively that the articles were sold to some third person, and were not furnished either on his credit or the credit of the vessel. In Ely v. Murray, 200 Fed. 371, 118 C. C. A. 520, the Circuit Court of Appeals for the First Circuit, in speaking of this statute, say:

"Beyond that, all the statute requires is that whatever was furnished should have been furnished on the order 'of the owner'; and it also provides that, in order that a lien therefor may be enforced in rem, 'it shall not be necessary to allege or prove that credit was given to the vessel.' Of course, this does not bar proof that whatever was furnished was furnished on the mere credit of the owner, and in no sense on the credit of the vessel; but it meets the presumption that there is no lien for materials furnished on the order of the owner, as there is a presumption in favor of a lien when the articles are ordered by the master under appropriate circumstances."

This was cited with approval in The Lucille (D. C.) 208 Fed. 426, and in The Dredge (D. C.) 217 Fed. 632.

Now, the evidence in this case shows that Carlson Bros., partners, were engaged, among other things in the building, equipping, and repairing of gasoline boats, and as such had for a long time been doing business with libelants on an open account, in which open account was charged the items sued for and many other items having no connection with either of the boats libeled here. Carlson Bros. were considered "a high-class institution and their credit was absolutely good, they were known to be very honest men," and there was "no reason why we should not trust them" (page 20). In April, 1913, libelants sold to Carlson Bros., and charged to them on their general account, the winches in question here. At intervals in 1913 and 1914 demands for payments on their general account were made of the Carlson Bros., but never any demand on the vessels or their owners for the materials sued for. "Our account was with Carlson; we rendered them the bills"

—says libelant's credit man (page 23); and on page 24. the same witness says:

"We never at any time built any winches or did any business of any kind in regard to the Berlin or the Orient upon the credit of any of the Lindenbergers [owners]. Our dealings were with Carlson; that is the man we looked to for the money."

It is true that on redirect examination this witness attempted to qualify the force of this testimony by saying, "I knew we had a claim on the boat," and "We never waive a lien right"; but the action and the nonaction of libelants speak louder than the words of their witness, and show to the mind of the court that these materials were sold on the sole credit of Carlson Bros. in the ordinary course of business, as a manufacturer would sell to a jobber. That being so, I do not think the vessels were liable and that there never was any lien to waive.

It is unthinkable that a general manufacturer of machinery, selling articles of machinery in the regular course of trade to an old customer, charging them to the customer on his open account, presenting to him bills from time to time for that open account, and being paid thereon from time to time, never claiming or demanding payment from any other person or "thing," never intimating to "any other person or thing" that he or it had incurred any liability, should, after the lapse of nearly 1½ years, be allowed to segregate some particular item out of that general account, and hold the "other person or thing," simply because he or it had bought that particular article from the trusted customer and has used in on a boat; and this, too, notwithstanding the fact that "the other person or thing" has paid the customer for the article.

Maritime liens are stricti juris, and "although maritime liens tend to build up commerce as furnishing a basis of credit, they are secret liens on movable property, following it into the hands of innocent holders. Hence the law inclines against them, and any one asserting such a lien must satisfy the court of his right to it." 26 Cyc. 751.

It clearly appears from the evidence in this case that the winches were sold to Carlson Bros. and on their credit, and, being so furnished, libelants waived their lien, if they ever had any.

Section 4 of the act of June 23, 1910, provides:

"That nothing in this act shall be construed to prevent a furnisher of repairs, supplies, or other necessaries from waiving his

right to a lien at any time, by agreement or otherwise, and this act shall not be construed to affect the rules of law now existing, either in regard to the right to proceed against a vessel for advances, or in regard to laches in the enforcement of liens on vessels."

Now, "an agreement or understanding as to whom credit was given may be inferred from acts and circumstances, as well as from express language, as is ordinarily true with reference to all alleged contracts where it must be shown that the minds of the parties met. Cuddy v. Clement, 115 Fed. 301, 303, 53 C. C. A. 94. The existence of an agreement may be shown by either direct or circumstantial evidence; and an express agreement is none the less express because circumstantial evidence is resorted to for its establishment." The Lucille (D. C.) 208 Fed. 426.

Besides, I doubt if Carlson Bros. could be considered as being "any person to whom the management of the vessel at the port of supply is intrusted" within the purview of the statute. The language quoted is general in its nature—following the specific enumerations "managing owner," "ship's husband," "master," all of which are the names of persons having an interest in the vessel or its business, or being in relations of trust and responsibility to the vessel or its owners, and having authority to direct the vessel's movements, or having some supervision over its welfare—not simply hired men or contractors for some specific job of repair or outfitting. The expression "ejusdem generis" would apply, and the general would be limited by the particular. If this be correct, then the burden of establishing that the credit was extended to the vessel (in the home port) would be where it was before the act of 1910—i. e., in this case, upon libelants, because the vessel was in her home port.

Findings and decree dismissing the libel in each case.