MEEKER v. LEHIGH VALLEY R. CO.

(Circuit Court of Appeals, Second Circuit. December 2, 1910.)

No. 61.

1. MONOPOLIES (§ 28*)—COMBINATIONS IN RESTRAINT OF INTERSTATE COMMERCE—ACTION FOR DAMAGES.

A complaint in an action to recover treble damages under Sherman Anti-Trust Act July 2, 1890, c. 647, § 7, 26 Stat. 210 (U. S. Comp. St. 1901, p. 3202), which alleges a combination and conspiracy between defendant and other interstate railroad companies to restrain and monopolize interstate commerce in anthracite coal in violation of sections 1 and 2 of the act, which, as alleged, was carried into effect (1) by increasing the price of coal at the mines, through ownership by the conspirators of the coal companies, and (2) by increasing the charge for transportation of coal to New York, so that the two together exceeded the tidewater price, and which contains a sufficient allegation of damage to plaintiff in his business as a coal dealer, states a cause of action under the act which is within the jurisdiction of a Circuit Court, the gist of the action being the unlawful conspiracy, and the fact that one of the means for carrying it into effect was an increase in freight rates, the reasonableness of which per se must first be determined, under the provisions

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

of Interstate Commerce Act Feb. 4, 1887, c. 104, 24 Stat. 379 (U. S. Comp. St. 1901, p. 3154), by the Interstate Commerce Commission, not constituting any ground for depriving plaintiff of the right of action expressly given by the anti-trust act.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 18; Dec. Dig. § 28.*]

**2. COURTS (§ 405*)—FEDERAL COURTS—JURISDICTION OF CIRCUIT COURT OF APPEALS.**

The question of the jurisdiction of a Circuit Court, when not the sole question determined, is reviewable by the Circuit Court of Appeals under Act March 3, 1891, c. 517, § 6, 26 Stat. 828 (U. S. Comp. St. 1901, p. 549), on a writ of error bringing up the whole case.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 1097–1103; Dec. Dig. § 405.*

Jurisdiction of Circuit Court of Appeals in general, see notes to Law Ow Bew v. United States, 1 C. C. A. 6; United States Freehold, Land & Fm. Co. v. Gallegos, 32 C. C. A. 475. Review of jurisdiction of Circuit Court, see note to Excelsior Wooden-Pipe Co. v. Pacific Bridge Co., 48 C. C. A. 351.]

In Error to the Circuit Court of the United States for the Southern District of New York.

Action at law by Henry E. Meeker, as surviving partner, etc., against the Lehigh Valley Railroad Company. Judgment (175 Fed. 320) for defendant, and plaintiff brings error. Reversed.

Writ of error to review a final judgment of the Circuit Court, Southern District of New York, sustaining a demurrer to, and dismissing, an amended complaint upon the ground that it does not state facts sufficient to constitute a cause of action.

The action was brought to recover treble damages under the federal anti-trust statute (Act July 2, 1890, c. 647, § 7, 26 Stat. 210 [U. S. Comp. St. 1901, p. 3202]).

The complaint alleges that the plaintiff and his predecessors have been engaged in the city of New York in the business of buying, shipping, and selling anthracite coal; that this coal can be obtained only in a limited area in Pennsylvania; that the greater part of the anthracite coal product is shipped to New York City; that the only means of shipping coal from the anthracite regions to New York is over the lines of the defendant railroad company and certain other railroad companies designated as the "Anthracite Companies"; that these companies have for many years owned and controlled large tracts of coal lands in said regions and have for many years been engaged, either directly or through the control of coal companies, in mining and dealing in anthracite coal, and control the Eastern market for a very large part of such coal annually mined.

The complaint further alleges that prior to 1901 the plaintiff and other independent shippers were able to, and did, purchase coal in said anthracite regions at varying competitive prices and arranged for its transportation to New York by the various anthracite companies at varying competitive charges, but that in that year said corporations, including the defendant, "conspired and combined together to increase the prices of anthracite coal at the mines and the charges for the transportation of such coal from the mines in Pennsylvania to New York tidewater to such a point as would enable them to monopolize the trade and commerce in anthracite coal between the said states, and, by driving all independent shippers out of business, to obtain exclusive control of such business and to control absolutely, especially in the New York market, the market price of anthracite coal; and they have ever since maintained such conspiracy and combination."

The complaint further alleges that the instrumentality employed to make said company effective was the Temple Iron Company, a mining corporation,

all the stock of which was owned by the Anthracite Companies; that the directors of this corporation were officials of the Anthracite Companies; and that these persons, while ostensibly acting as directors, really met and acted for the purpose of considering the most effective means of insuring the success of the conspiracy.

It further alleges, in substance, that the conspiracy was carried into effect by increasing the price to be paid for coal at the breakers or mines to 65 per cent. of the tidewater prices and by charging 40 per cent. of the tidewater prices for transportation to New York tidewater. "This increase in price at the mines," so the complaint alleges, "was made so that the independent shippers would not then or at any time subsequently be able to sell anthracite coal in the New York market, in competition with the coal companies owned or controlled by the Anthracite Companies." And it is also alleged that, while the increased charge for transportation rendered it impossible for the coal companies owned by the Anthracite Companies to make a profit on coal shipped to New York tidewater, yet that this result made no difference to the Anthracite Companies as they gained what the coal companies lost.

The complaint also alleges that, as a result of the conspiracy, the Anthracite Companies have gained almost exclusive control of the New York market for anthracite coal, and, further, contains allegations of damage which are examined in the opinion.

The original complaint in this action was demurred to, and the demurrer was sustained by Judge Ray in an opinion reported in 162 Fed. 354. Thereupon the plaintiff filed the present amended complaint which is regarded as containing materially different facts from those appearing in the original complaint.

Shearman and Sterling (John A. Garver and William A. Glascow, Jr., of counsel), for plaintiff in error.

Alexander & Green (Frank H. Platt, Allan McCulloh, and George S. Franklin, of counsel), for defendant in error.

Before LACOMBE, WARD, and NOYES, Circuit Judges.

NOYES, Circuit Judge (after stating the facts as above). The complaint sets forth a conspiracy on the part of the defendant and other railroad companies to force independent dealers in anthracite coal out of the field and to obtain control of the market for that product. This conspiracy was carried into effect, it is alleged, (1) by increasing the price paid at the mines, and (2) by increasing the charge for transportation so that the two together exceeded the tidewater price. Obviously independent dealers could not do business when the cost of buying coal and getting it to market was 105 per cent. of the market price.

These averments clearly state a violation of the federal anti-trust statute. A conspiracy to monopolize interstate commerce, as well as a conspiracy in constraint of such commerce, is charged. But it does not necessarily follow that every violation of the statute gives rise to a cause of action under its seventh section. The plaintiff must show that he has sustained damage by the violation. And here the defendant contends that the only damages which the plaintiff claims are those arising from unreasonable transportation charges, and that the Interstate Commerce Commission is the tribunal to which resort must be had in the first instance to determine the reasonableness of such charges.

It is well settled that a shipper seeking reparation based upon the unreasonableness of a freight rate must, primarily, seek redress through the Interstate Commerce Commission. Texas, etc., R. Co. v. Abilene Cotton Oil Co., 204 U. S. 426, 27 Sup. Ct. 350, 51 L. Ed. 553. See, also, Baltimore, etc., R. Co. v. Pitcairn Coal Co., 215 U. S. 481, 30 Sup. Ct. 164, 54 L. Ed. 292, and the opinion of this court in Wickwire Steel Co. v. New York Central, etc., R. Co. (decided in June, 1910) 181 Fed. 316.

The difficulty lies in the application of this rule here. The plaintiff is not seeking redress as a shipper. It is not alleged that the defendant carried any coal for him or that he offered any for shipment. The defendant is not sued as a carrier, but as a party to an unlawful conspiracy. The unreasonableness of the railroad rate was only one of the means employed to make the conspiracy effective. The increase of the price at the mines was as essential to that result as the increase in the transportation charge. That the interstate commerce act (Act Feb. 4, 1887, c. 104, 24 Stat. 379 [U. S. Comp. St. 1901, p. 3154]) creates a tribunal to which shippers must resort, primarily, for relief against excessive freight charges, is no reason why a person injured by an unlawful conspiracy cannot invoke the relief expressly granted by another and later federal statute. It might as well be claimed that the United States cannot proceed against a combination of railroad companies to fix rates until the reasonableness of such rates has been passed upon by the Interstate Commerce Commission. Yet combinations of that nature were enjoined in the Trans-Missouri Freight Association Case. 166 U. S. 290, 17 Sup. Ct. 540, 41 L. Ed. 1007, and in the Joint Traffic Association Case, 171 U. S. 505, 19 Sup. Ct. 25, 43 L. Ed. 259.

It is true that the courts in determining as one of the elements of a conspiracy case the reasonableness of freight rates might pass upon the same question which would be presented to the Interstate Commerce Commission by a shipper proceeding under the act to regulate commerce. But the possibility of want of uniformity in decisions constitutes no ground for denying to an injured person a right of action granted by a statute of the United States separate and distinct from that act, however weighty such consideration might be in determining whether the common-law rights of a shipper and the right to demand damages given by the interstate commerce act itself are subjected to its other provisions. Obviously the same possibility would exist in case of proceedings by the government to enjoin unlawful railroad combinations.

It is also contended by the defendant that, if the object of the conspiracy were to drive the plaintiff and other independent shippers out of the market, the complaint does not allege any damages.

We think, however, that the allegations of damage, although somewhat general, are sufficient to stand the test of demurrer. It is stated that prior to the conspiracy the business of the plaintiff was extensive and profitable, but that since the conspiracy became effective such business has been greatly curtailed and has been conducted either at a loss or at only a small profit. The nature of the injuries is fairly

set forth, and the only inference possible from the allegations is that the damages arose as the direct consequence of the conspiracy charged.

The complaint is held to state a cause of action under the federal anti-trust statute. It follows that the demurrer was erroneously sustained by the Circuit Court.

But it is contended that this court has no power to reverse the judgment because a jurisdictional question was determined by the Circuit Court, reviewable only by the Supreme Court of the United States. The demurrer, however, was sustained upon the ground that the complaint failed to state a cause of action, not because the court had no jurisdiction. Even if it were necessary to allege in the complaint antecedent action by the Interstate Commerce Commission, the court had jurisdiction of the action. The failure to allege such an essential fact does not deprive a court of jurisdiction. And, even if the question of jurisdiction were before the Circuit Court, it was not the sole question there, and it came with all the other questions in the case for the determination of this court upon the writ of error. Boston & Maine R. R. Co. v. Gokey, 210 U. S. 155, 28 Sup. Ct. 657, 52 L. Ed. 1002.

Judgment reversed.