LOCKER et al. v. AMERICAN TOBACCO CO. et al.

(Circuit Court of Appeals, Second Circuit. November 10, 1914.)

No. 29.

1. MONOPOLIES (§ 28*)—SHERMAN ANTI-TRUST ACT—DAMAGES.
    Proof that defendants have violated the Sherman Anti-Trust Act July 2, 1890, c. 647, 26 Stat. 209 (Comp. St. 1913, §§ 8820–8830), will not establish a cause of action for damages to plaintiffs' business, recoverable under section 7 (8829), unless it is proved that the defendants' acts have injured plaintiffs and caused them damages recoverable at law.
    [Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 18; Dec. Dig. § 28.*]

2. MONOPOLIES (§ 17*)—SHERMAN ANTI-TRUST LAW—INJURIES—SCHEME OF BUSINESS—REFUSAL TO SELL JOBBERS.
    Where certain tobacco manufacturers had formed a combination in restraint of trade in violation of the Sherman Anti-Trust Act, and had appointed the M. Company their sole jobbing agent in Greater New York, on condition that it should not sell at more than list prices, receiving a discount on the goods sold, a determination on its part that it would not sell to other jobbers in its territory, but only to retailers, because its former practice of selling to jobbers resulted in insufficient service by its

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

salesmen to retailers, such determination was not illegal, and did not constitute a violation of the act, for which a jobber, whose orders were declined, could recover treble damages under section 7.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 13; Dec. Dig. § 17.*]

In Error to the District Court of the United States for the Southern District of New York.

On writ of error to the District Court for the Southern District of New York to review a judgment in favor of the defendants. The complaint was dismissed, as to the defendants Blackwell's Durham Tobacco Company and the American Snuff Company and a verdict was directed in favor of the American Tobacco Company and the Metropolitan Tobacco Company. An action similar to this was brought in the state courts and the complaint was dismissed. The dismissal was sustained by the New York Court of Appeals. 195 N. Y. 565, 88 N. E. 289.

See, also, 200 Fed. 973.

Charles Dushkind, of New York City, Charles C. Daniels, and John S. Wise, of New York City, for plaintiffs in error.

Delancey Nicoll, Junius Parker, and Thomas S. Fuller, all of New York City, for defendants in error The American Tobacco Co., American Snuff Co., and Blackwell's Durham Tobacco Co.

William N. Cohen, Arthur J. Cohen, and William S. Weiss, all of New York City, for defendant in error Metropolitan Tobacco Co.

Before LACOMBE, COXE, and WARD, Circuit Judges.

COXE, Circuit Judge. The suit is brought under section 7 of the Anti-Trust Act, which is as follows:

"Sec. 7. Any person who shall be injured in his business or property by any other person or corporation by reason of anything forbidden or declared to be unlawful by this act may sue therefor in any circuit court of the United States in the district in which the defendant resides or is found, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the costs of the suit, including a reasonable attorney's fees."

[1] It matters not that certain of the defendants have violated the provisions of the Sherman Act unless it be proved that such acts have injured the plaintiffs and caused them damages which can be recovered in an action at law.

[2] The plaintiffs were doing business in Brooklyn as jobbers in tobacco and its products and were not engaged in manufacturing. The American Tobacco Company is a manufacturer of cigarettes, plug and smoking tobacco. The defendant American Snuff Company is a manufacturer of snuff. The Blackwell's Durham Company is a manufacturer of smoking tobacco. The Metropolitan Tobacco Company was engaged in substantially the same business as the plaintiffs, viz.; not as a manufacturer, but as a jobber of tobacco and its products, which it purchased from the manufacturer and sold to retailers in New York and Brooklyn.

It is not now contended by the defendants that the American Tobacco Company, American Snuff Company and Blackwell's Durham Tobacco Company were not a combination forbidden by the Sherman Law during the time covered by this action. The agreement between the American Tobacco Company and the Metropolitan Company was, it seems to us, a legitimate one, viz., to make the Metropolitan Company its sole agent in Greater New York, on condition that it should not sell the American Company's products at more than the list prices. The Metropolitan Company was to receive a discount of five per cent. on goods so sold. The agreement was not reduced to writing. The plaintiffs entered business in 1903 after the foregoing arrangement had been in existence for about five years. In June, 1904, the Metropolitan Company concluded that it would not sell to local jobbers but would sell direct to the retail trade in Brooklyn. The reasons for this change in policy are fully set out in the testimony and seem to be fair and reasonable. If the manufacturing defendants had concluded to sell their products solely through instrumentalities of their own and had organized in their factories a selling department through which they supplied their products to all who desired to purchase them, it will hardly be contended that such action was even within the mischief of the Sherman Law. How, then, does an act which the defendants might lawfully do themselves become unlawful when done by another to whom they sell or consign their goods? There can be no pretense that the Metropolitan Company has received any unlawful preference or clandestine favors from the manufacturers. The prices at which they sell to the Metropolitan Company are their own list prices and there is nothing to show that the manufacturers received an exorbitant profit by this arrangement. The Metropolitan Company may sell, for less than the list price but it cannot sell for a higher price. It is not prohibited from buying or selling the products of other manufacturers at any price which it may induce the manufacturer to take or the purchaser to give. We are unable to discover anything illegal or unfair in the Metropolitan Company's method of conducting business. It is not the sole agent of the other defendants but deals with the produce of many manufacturers, in no way connected with the manufacturing defendants, who are apparently entirely satisfied with the Metropolitan's methods and treatment. The reasons for the adoption of these methods are well stated by Mr. Bendheim, the president of the Metropolitan Company, as follows:

"Q. Mr. Bendheim, will you now state to the court and jury the condition that existed in Brooklyn that led you to refuse to sell the jobbers in that territory during that period; that is, in May, 1904? A. We were losing our hold on the retail trade, which we considered against our interest in a great many ways. Our salesmen preferred to sell jobbers, because it is easier to sell a bill of $100 than 40 or 50 cents of assorted goods. They drifted gradually into the habit of selling the wholesalers more than retailers. We had promised and agreed to call on retailers once a week, and they were not being called on. Systematically it weakened our power to introduce the goods. Our goods were used to help along other goods, outside goods, and those were the main conditions."

Under the method complained of, the sequence, is Producer, Jobber, Retailer, Consumer. This seems the usual, natural and fair way of

getting the goods from the manufacturer to the consumer. We can think of no reason based on the common law or the Sherman Law which required the introduction of a second jobber or wholesaler between the producer and the consumer. In short, we are convinced that what was done by these defendants 'was not prohibited by law, but was a reasonable commonsense trade arrangement dictated by the exigencies of the situation. We see nothing forbidden by the Sherman Act in a manufacturer consigning or selling his product to a jobber for a particular territory and placing certain restrictions upon the prices at which the goods are to be sold. Many of the large mills have a factor in New York to whom their products are thus consigned. He can sell to A. or B. or both as he sees fit and the consignor is not concerned with the transaction so long as he gets his price and the terms of the consignment are not violated. The same is true of the jobber; he is at liberty to sell to one retailer or twenty retailers as he sees fit.

We are unable to discover anything illegal in a manufacturer of tobacco disposing of his goods to a jobber to sell to retailers, or, if he deems it advisable, to change his policy, and sell direct to the retailer himself. Why may he not do so? One who desires to become a jobber has no right to complain because the manufacturer chooses another to do this work, unless the manufacturer owes some duty to consign his product, or a part of thereof to him. The laws of trade are not wholly altruistic, they may often be hard and selfish, but it is no part of the duty of courts to attempt to enforce the precepts of the decalogue. In the struggles engendered by fierce competition, losses must occur and injustice may be done, but this is frequently inevitable and cannot be prevented so long as the parties keep within the law.

As we have thus disposed of the case upon the principal question, it is unnecessary to discuss the subsidiary questions involved. We think it proper to say, however, that we find no satisfactory proof of damages; the matter seems to be left to speculation and conjecture.

The judgment is affirmed with costs.