## AMERICAN SEA GREEN SLATE CO. et al. v. O'HALLORAN et al.

(Circuit Court of Appeals, Second Circuit. December 14, 1915.)

No. 64.

1. MONOPOLIES ⬥⟹17—SALES OF GOODS—APPOINTING EXCLUSIVE AGENT.

If a corporation organized by producers of slate, and to which they sold their output, was not a combination obnoxious to Sherman Act July 2, 1890, c. 647, 26 Stat. 209, the appointment by it of an exclusive selling agent was not unlawful.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 13; Dec. Dig. ⬥⟹17.]

2. MONOPOLIES ⬥⟹28—REMEDIES OF PERSONS INJURED—DAMAGES RECOVERABLE.

If a corporation organized by producers of slate was an unlawful combination, damages directly caused by reason of its appointment of an exclusive selling agent were recoverable as other damages, under Sherman Act July 2, 1890, c. 647, § 7, 26 Stat. 210 (Comp. St. 1913, § 8829), providing that any person injured in his business or property by any act forbidden or declared to be unlawful thereby may recover threefold the damages sustained.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 18; Dec. Dig. ⬥⟹28.]

3. MONOPOLIES ⬥⟹28—REMEDIES OF PERSONS INJURED—DAMAGES RECOVERABLE.

To recover damages under Sherman Act, § 7, plaintiffs must show that as a result of defendant's acts actual damages susceptible of expression in figures were sustained, and they must not be speculative, remote, or uncertain.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 18; Dec. Dig. ⬥⟹28.]

4. MONOPOLIES ⬥⟹28—ACTIONS FOR DAMAGES—EVIDENCE.

In an action for damages under Sherman Act, § 7, the damages must be proved by facts from which their existence is logically and legally inferable, and not by conjectures or estimates.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 18; Dec. Dig. ⬥⟹28.]

5. MONOPOLIES ⬥⟹28—ACTIONS FOR DAMAGES—EVIDENCE.

The producers of a particular kind of slate organized a corporation and sold all of their output to it at 10 per cent. discount from its list prices. The corporation sold to wholesalers, including plaintiffs. A number of persons in the roofing business in Cleveland, some of whom had been plaintiffs' customers, organized a roofing company, and such company was constituted the exclusive selling agent of the slate company in Cleveland. *Held* that, in an action by plaintiffs under Sherman Act, § 7, plaintiffs could not recover damages caused by the fact that they were compelled to buy at a price higher than the market value, where there was no evidence of market value, except evidence as to the price at which the producers sold to the slate company, as this company bought each producer's whole product, including sizes slow of sale, as well as sizes largely desired, and it was not fair to assume that, had there been no combination, plaintiffs could have bought from the producers at the price at which they sold to the company.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 18; Dec. Dig. ⬥⟹28.]

---

⬥⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

6. MONOPOLIES ☞28—ACTIONS FOR DAMAGES—EVIDENCE.

Damages for the loss of the business of former customers of plaintiffs, who became members of the roofing company, could not be recovered on the supposition that they would have continued to buy as much as in previous years, where there was no evidence to support this supposition, and there was not even evidence that such former customers obtained any slate at all of the kind in question.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 18; Dec. Dig. ☞28.]

7. MONOPOLIES ☞28—ACTIONS FOR DAMAGES—EVIDENCE.

Damages could not be recovered for the loss of the business of the customers who ceased buying from plaintiffs and became members of the roofing company, unless plaintiffs showed that the change was made because of the unlawful combination, since this could not be inferred from the fact that the change was made.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 18; Dec. Dig. ☞28.]

In Error to the District Court of the United States for the Northern District of New York.

Action by James O'Halloran and another against the American Sea Green Slate Company and others. Judgment for plaintiffs, and defendants bring error. Reversed.

This cause comes here upon writ of error to review a judgment in favor of defendants in error who were plaintiffs below. The action was brought to recover treble damages under section 7 of the act of Congress of July 2, 1890, the Sherman Anti-Trust Act. By stipulation of the parties the cause was tried by the court without a jury; findings of fact and conclusions of law were filed, to some of which exceptions were taken. The opinion of the District Judge will be found in 207 Fed. 187.

Lewis E. Carr, of Albany, N. Y. (Walter C. Noyes, of New York City, and J. B. McCormick, of Granville, N. Y., of counsel), for plaintiffs in error.

Randall J. Le Boeuf, of Albany, N. Y., for defendants in error.

Before LACOMBE, COXE, and WARD, Circuit Judges.

LACOMBE, Circuit Judge. The opinion of Judge Ray sets forth the facts very fully. As it may readily be consulted, a very brief statement of the issues is all that need be made here. Sea green slate is produced in a small section located in the state of Vermont. Prior to 1904 the various producers of this slate dealt independently with purchasers of such product. In 1904 many of these producers incorporated a company known as the American Sea Green Slate Company, in which they became stockholders. Slate of this sort comes in different dimensions, and apparently it has always been the practice to list the prices of different sizes; competition between the sellers being brought about by variance between the discounts which they would allow on one or more or all of the sizes in which they dealt. To the new company its stockholders sold all their output each year at 10 per cent. discount from the company's list prices; and the company sold to all

wholesalers, including the plaintiffs, at a discount of 25 cents per square, a square being the quantity necessary to cover 100 feet of roof when laid with a three-inch lap. In 1909 a number of persons engaged in the roofing business in Cleveland, some of whom were and had been customers of the plaintiffs, O'Halloran & Jacobs, organized and became members of a corporation known as Cuyahoga Roofing Company. Thereafter such company was constituted exclusive selling agent of defendant company in Cleveland. For all further facts, other than such as are incidentally referred to hereinafter, the opinion in the District Court should be consulted.

[1, 2] Preliminary to any discussion we may state, as to the Cuyahoga Company, that its appointment as exclusive selling agent is a matter of no importance. If upon examination of the record the conclusion were reached that the original combination, the American Sea Green Slate Company, was not one obnoxious to the Sherman Act, it could appoint an exclusive selling agent anywhere. See our decision in Locker v. American Tobacco Co., 218 Fed. 447, 134 C. C. A. 247 (Nov. 10, 1914). If, however, the Sea Green Slate Company were an unlawful combination, then damages directly caused by reason of its appointment of an exclusive agent might be shown, on the same theory that damages caused by other of its acts could be shown.

Important causes involving the construction of the first two sections of the Sherman Act are now before the Supreme Court; some have been argued, others will be argued in the near future. About the facts in the case at bar there is much to be said on both sides. If any reversible error be found, which would result in a new trial, it would seem to be wiser not to pass upon the questions now before the Supreme Court. The answers of that tribunal to those questions will be made known before a new trial can be had. Therefore, without now discussing the question whether the Sea Green Slate Company was a combination of the sort forbidden by the Sherman Act, and assuming for the purposes of this writ of error that it was such a combination, we proceed directly to a consideration of the findings and conclusions assessing damages.

[3, 4] To recover under the seventh section plaintiffs must show that, as a result of defendants' acts, actual damages were sustained—damages in some amount which is susceptible of expression in figures. These damages must be proved by facts from which their existence is logically and legally inferable—not by conjectures, or estimates. They must not be speculative, remote, or uncertain. As we understand the law, a jury may not merely *guess* that plaintiff lost $1,000 or $10,000 which they might have made, even if they feel reasonably sure that some loss was sustained. They cannot award damage as they do for pain or suffering in an action for personal injuries, or for reputation as they do in a libel suit.

That was a defect in the original Sherman Act from the viewpoint of the individual trader; the treble damage section frequently did not give him relief. He could only get such relief by stirring up the government to apply for an injunction and dissolution of the combination. That defect is now cured by the Clayton Act, which gives the injured

party equitable relief to terminate the illegal combination, which is hurting him.

Judge Ray found $7,522.95 actual damage, which he trebled. The items of this are these:

1. Because plaintiffs were compelled to buy slate at a price higher than the market value. They bought 68,434.21 squares........$6,126.97
2. Loss of the business of Morgan Bros. and two others (which was worth the sum of $61.50 a month as the judge finds)............ 1,045.50
3. Loss on 720 squares............................................ 172.08
4. Loss on 640 squares............................................ 152.96
5. Loss by expenses of an Akron shipment......................... 25.44

$7,522.95

[5] 1. As to the damages for loss resulting from the circumstance that plaintiffs were compelled to buy at a price higher than the market value: Certain suggestive facts are found in the findings. Thus it appears that in the period prior to the advent of the Sea Green Slate Company plaintiffs bought and sold 35,571 squares (an average of about 8,200 a year). In the period when the company was in existence they bought and sold 66,434 squares (an average of about 12,500 a year). To infer that the result of the combination was to reduce the volume of their business is not warranted by these figures. In the period prior to the company's advent plaintiffs made a gross profit, on sea green slate, of $11,089.02 (an average of something over $2,300 a year). In the period when the company was in existence they made a gross profit of $18,435.37 (an average of something over $3,300 a year).

The fundamental difficulty, however, with the figuring by which the conclusion was reached that their loss was $6,126.97 is that the "market price" for all varieties of slate is taken at the list price, less 10 per cent. It is true that such is the price which the Sea Green Slate Company agreed to pay and did pay to the producers from whom it bought. But the company contracted to and did buy every producer's *whole* product, as produced. This included sizes slow of sale as well as sizes largely desired. Plaintiff only bought such sizes as it had orders for, or knew it could promptly place. It seems an unfair assumption, under these circumstances, that, had there been no combination, the plaintiffs could have bought all the squares they desired from the producers at a uniform discount of 10 per cent. Unless there be given more evidence as to market value during the years in question, we do not see how this specific amount of "loss" can be calculated.

[6] 2. There is allowed $1,045.50 for the loss of the business of three concerns doing business in Cleveland, viz. Morgan Bros., David & Glaive, and Koberna. This is figured out as follows: Prior to the organization of the Cuyahoga Roofing Company, plaintiffs sold sea green slate in Cleveland to the three concerns enumerated. Subsequent to such organization these concerns ceased to buy such slate from plaintiffs; therefore, it is contended, the rate of profit which plaintiffs made on sales to these three concerns during the years the latter did purchase such slate is the measure of the profit plaintiffs would have made during the period of the existence of this roofing company. This

figuring is highly speculative; it presupposes that the three concerns would have bought as much sea green slate per annum in the later years as in the earlier ones. There is no evidence to support any such supposition; the finding merely states that the three concerns (during the later period) discontinued all purchases from the plaintiffs, and "discontinued their business as independent roofers, but continued their business solely as members of the Roofing Company." How much slate the business brought into the Roofing Company by these three concerns amounted to, or whether any slate at all of this kind was obtained, through the Roofing Company, for any customers originally of the three concerns, does not appear. No one of the three was called to testify.

[7] Moreover, without any testimony from the three concerns, it is assumed that they ceased buying from the plaintiffs because of defendants' acts. But these three concerns were free to change at will; several reasons might be suggested why they ceased buying from the plaintiff. It was for the plaintiffs to show that the change was *because* of defendant's combination. If that were the reason, it was *provable* out of the mouths of the three dealers; merely to infer it from the fact that they made the change is pure speculation.

3 and 4. Loss on 720 squares in 1909 and 640 squares in 1910 in Cleveland, where the Cuyahoga Company was exclusive selling agent: As to these squares it is found that plaintiffs bought them and sold them at list price, 23.9 cents per square. By reason of this circumstance the court finds that they were injured $172.08 and $152.96 (these sums including expenses of sale). A statement put in evidence, taken from plaintiffs' own books, showed that during the period when the Cuyahoga Company was in existence plaintiffs sold in Cleveland 5,867 squares in 1909 at a profit of 33 cents per square and 3,768 squares in 1910 at a profit of 29.5 cents per square. Inasmuch as in the thirty-eighth finding it is shown that in the 4½ years prior to the advent of the Sea Green Slate Company plaintiffs' profits on their total sales of this slate was at 29.5 cents per square yard, it is difficult to see how, if these 720 and 640 squares are included in the list of sales above referred to, direct loss on sales in Cleveland by reason of the combination can be found. We are unable to determine whether or not these special sales are therein included, and, if not, why they are not. It seems unnecessary, however, further to discuss these small items, because the result of our decision as to the large items will involve a new trial, when points which are now obscure may be illuminated by further proof.

5. Expenses on Akron shipment: According to the findings, defendants refused on a certain date to sell to plaintiffs sea green slate for shipment into Cleveland; this refusal presumably was to carry out the objects of the combination. Requiring some slate for delivery in Cleveland, plaintiffs ordered a lot to be shipped to a firm at Akron, intending to divert it while en route to Cleveland for plaintiff's account, under some arrangement with the Akron firm. Plaintiffs failed so to divert it, and it had to be reshipped from Akron to Cleveland, thereby putting plaintiffs to an additional expense for extra switching and

freight charges. This expense $25.44 was allowed as damages, and trebled. The finding does not show whether this expense was incurred solely because plaintiffs had to get the goods in this roundabout way, or whether, if they had given timely and proper notice of diversion to the railroad, the goods would have reached them without additional expense. Presumably this point will be made clear on a new trial.

The judgment is reversed.