### KEOGH v. CHICAGO & N. W. RY. CO. et al. *

(Circuit Court of Appeals, Seventh Circuit. January 4, 1921.)

No. 2776.

1. Monopolies ☞28—Individual cannot recover under Anti-Trust Act without showing damages.

Under Sherman Anti-Trust Act, § 7 (Comp. St. § 8829), allowing any person injured by anything forbidden by the act to recover threefold damages by him sustained, an individual cannot recover without showing damage to him by defendant's act, though defendants might have been subject to a criminal prosecution by the government, or to corrective or coercive proceedings at the instance of the Interstate Commerce Commission.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*Certiorari denied 254 U. S. —, 41 Sup. Ct. 537, 65 L. Ed. —.

**2. Monopolies ⊜⟫28—Damage to individual under Anti-Trust Act cannot be conjectural.**

To recover under Sherman Anti-Trust Act, § 7 (Comp. St. § 8829), plaintiff must show damage to him by defendant's illegal acts by facts from which its existence is logically and legally inferable, not by conjectures or estimates.

**3. Monopolies ⊜⟫28—Collection of lawful rates under combination cannot damage shipper.**

A shipper cannot recover treble damages under Sherman Anti-Trust Act, § 7 (Comp. St. § 8829), from railroads which combined to restrain interstate commerce, where the only damage alleged by him was the payment of a rate higher than he would have been compelled to pay, in the absence of such combination, if the rate which he paid had been held reasonable by the Interstate Commerce Commission, so that the railroads were required to collect it and the shipper to pay it.

**4. Commerce ⊜⟫88—Rates established by commission treated as embodied in statute.**

Rates established in tariff schedules filed by railroads, which had been found by the Interstate Commerce Commission to be reasonable, are to be treated as though they were embodied in the statute, binding as such upon both railroads and shipper alike.

In Error to the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Action by John W. Keogh against the Chicago & Northwestern Railway Company and others. Judgment for defendants, and plaintiff brings error. Affirmed.

This writ of error was sued out by plaintiff to reverse the judgment in favor of the defendant in the District Court. He brought his action to recover threefold damages under the provisions of the Sherman Anti-Trust Act (Comp. St. § 8820 et seq.). The declaration alleges in substance that on September 1, 1912, and for several years prior, plaintiff was engaged in the business of manufacturing and selling excelsior and tow, with his principal office and place of business in Chicago; from 1909 to the date of the commencement of this suit he owned and operated a mill at St. Paul, Minn., where he manufactured his products and shipped them to various consignees in interstate trade and commerce within the meaning of the Act of Congress of July 2, 1890, entitled, "An act to protect trade and commerce against unlawful restraints and monopolies." The defendant corporations, during the same time, were common carriers, engaged in interstate commerce from St. Paul to various points. The individual defendants are the officers, agents and employees of the defendant corporations. It is charged that after September 1, 1912, plaintiff paid large sums of money to the various carriers for transporting his products from St. Paul; that the defendant corporations, at their expense, maintained an association known as "the Western Trunk Line Committee"; that the members of the association were competing carriers in interstate commerce and the object of the association is to agree upon, fix, maintain, and publish uniform, arbitrary, and noncompetitive freight rates to competing points; that one of the rules of the association requires the unanimous vote of all members to fix or change a freight rate and all members must abide by the decision of the association and maintain the freight rates so fixed. Any member failing to maintain the rates so fixed shall be expelled or suffer other penalties; that the committee met from time to time in Chicago and agreed upon, fixed, maintained, and published freight rates to various points in several states, and the rates so fixed were arbitrary, uniform, unreasonable, and noncompetitive, and not based on what would be a fair remunerative rate to the carriers transporting such freight, and that it maintained and published such rates in violation of the Anti-Trust Act of Congress; that thereby all competition for the transportation of excelsior and

⊜⟫For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

tow from St. Paul was destroyed and the rates agreed upon maintained; that defendants during the period unlawfully conspired to and did restrain trade and commerce among several states, contrary to the statute, and by reason of the conspiracy plaintiff had been injured in his business and property, in that the freight rates which defendants collected for the transportation of excelsior and tow from the plaintiff were greatly increased over the freight rates which would have been charged and collected, if no such conspiracy had been entered into, setting forth a detailed statement of shipments made by the plaintiff from St. Paul to various points between September 1, 1912, and the date of the commencement of this suit; that the defendant corporations embraced all the common carriers running out of St. Paul, and it was necessary for him to patronize all or some of the defendants; that the consequence of the conspiracy was that plaintiff's profits during the time in question were reduced to the extent of the difference between the rate that would have existed, had it not been for the conspiracy and the rates collected as a result thereof.

The second count charges that from September 1, 1912, the defendants carried on their business in accordance with the plans adopted by the Western Trunk Line Committee and all competition as to rates for the transportation of excelsior and tow from St. Paul which had theretofore existed was prevented and destroyed by the fixing of the rates which were greatly in excess of the freight rates which but for the conspiracy would have prevailed; that in 1909 and 1910 plaintiff built a tow and excelsior mill at St. Paul at great expense and prior to September 1, 1912, he had shipped 9,000 tons of his products per year, and that his net profit on Chicago shipments was $1 per ton; that after that date, defendants increased freight rates on his products from St. Paul to Chicago and other points; that the rates were not competitive and were the result of the combination and conspiracy, and all competition on the freight rates was destroyed. By reason of the alleged unlawful rates and in consequence of the conspiracy, the net profits of the plaintiff on excelsior and tow manufactured by him, decreased from $1 per ton to 30 cents per ton; that the contract and combination was in restraint of trade and commerce, contrary to the provisions of the statute.

Defendants filed separate pleas of the general issue and notices of special matters to be shown in defense. The special matters set up in the notices were in substance that the rates complained of in the declaration were those that were subject to the jurisdiction of the Interstate Commerce Commission; that in the months of September, October, November and December, 1912, the defendants filed schedules or tariffs with the Interstate Commerce Commission, which were published as required by law, and carried the rates on excelsior and tow mentioned in the declaration; that the plaintiff had filed his complaint with the Interstate Commerce Commission, which, upon a hearing, held that the rates from St. Paul to Chicago were reasonable, and that the rates from St. Paul to interstate destinations other than Chicago were lawful, in so far as they did not represent advances over previous interstate rates of more than $3\frac{1}{2}$ cents per 100 pounds. Plaintiff filed his application for a rehearing, which was denied; later he filed a second petition to have the case reopened, for the purpose of considering whether carload rates on a 30,000-pound minimum basis on plaintiff's products should be made lower than rates fixed by the Commission upon a 20,000-pound minimum basis. Upon a hearing, the rates, as fixed upon the prior hearing, were permitted to stand by the Commission. Afterwards, defendants filed amended and modified schedules, applying to these products, from St. Paul to St. Louis, Mo., Des Moines, Iowa, and other destinations, which were in accordance with the findings and report of the Commission. All the tariffs and schedules of which the plaintiff complains have been found by the Commission to be reasonable and lawful.

In the progress of the trial in the court below the court intimated that in its judgment the special matters referred to in the notices, if proved, would be a bar to the action. By agreement, the jury was discharged, the special matters set forth in the amended notices were considered as having been well pleaded in one or more special pleas to the declaration, and the reports

and orders of the Interstate Commerce Commission in the tow and excelsior cases should be considered as having been set forth and incorporated in the special pleas; that a general demurrer to each of said special pleas be interposed on the ground that the facts alleged in the said special pleas do not constitute a defense at law. The court thereupon overruled the demurrers. Plaintiff elected to stand by his demurrers, the suit was dismissed, and judgment rendered against the plaintiff for costs.

H. P. Young, of Chicago, Ill., for plaintiff in error.

R. B. Scott and J. C. James, both of Chicago, Ill., for defendants in error.

Before BAKER and ALSCHULER, Circuit Judges, and FITZHENRY, District Judge.

FITZHENRY, District Judge (after stating the facts as above). Plaintiff in error seeks to set aside the judgment of the District Court against him in his action for damages against the defendants under section 7 of the Sherman Anti-Trust Act (Comp. St. § 8829), upon the ground that the trial court erred in holding the fact that the freight rates charged and collected by the defendants had been found to be reasonable by the Interstate Commerce Commission was a defense to the action, and overruled plaintiff's demurrers to the defendants' pleas setting out the proceedings had before the Commission.

[1] If the plaintiff had a remedy in the premises it was by virtue of section 7, supra, which provides:

"Any person *who shall be injured in his business or property* by any other person or corporation by reason of anything forbidden or declared by this act, may sue therefor * * * and shall recover threefold the damages *by him sustained.* * * *" (Italics ours.)

Under this statute those who may sue for threefold damages by virtue of its terms are limited to those "who shall be injured in his business or property," and if a recovery is permitted it must be limited to the damages "by him sustained." Pennsylvania Ry. Co. v. International Coal Co., 230 U. S. 184, 33 Sup. Ct. 893, 57 L. Ed. 1446, Ann. Cas. 1915A, 315. The mere fact that the defendants might have been subject to a criminal prosecution by the government, or to corrective or coercive proceedings at the instance of the Interstate Commerce Commission is of no avail to a litigant unless it is established that he sustained pecuniary damage. Pennsylvania Ry. Co. v. International Coal Co., supra; Knudsen v. Michigan Central R. R. Co., 148 Fed. 968, 79 C. C. A. 46; Meeker v. Lehigh Valley R. R., 183 Fed. 548, 106 C. C. A. 94; Central Coal & Coke Co. v. Hartman, 111 Fed. 96, 49 C. C. A. 244; Motion Picture Patents Co. v. E. Clair Film Co. (D. C.) 208 Fed. 426; Imperial Film Co. v. General Film Co. (D. C.) 244 Fed. 985.

[2] To recover under this statute plaintiff must show, as a result of the defendants' acts, actual damages were sustained. These damages must be proved by facts from which their existence is logically and legally inferable, not by conjecture nor estimates. American Seagreen Slate Co. v. O'Halloran, 229 Fed. 77, 143 C. C. A. 353; Central Coal & Coke Co. v. Hartman, 111 Fed. 96, 49 C. C. A. 244.

[3] Plaintiff in the first count of his declaration very clearly limits his damages due to the alleged conspiracy or combination in restraint of trade to the difference between the rates that were charged by reason thereof and what the rates might have been had the alleged conspiracy not intervened, but described in the second count as having had the effect of reducing plaintiff's profits on his products from $1 to 30 cents per ton. No other element of damage is suggested by the pleadings. The question is squarely presented as to whether or not railroads are culpable in damages for charging and collecting rates which have been found to be reasonable by the Interstate Commerce Commission.

A similar question was before this court in National Pole Co. v. Chicago & North Western Ry. Co., 211 Fed. 65, 127 C. C. A. 561. In that case, upon the authority of Texas & Pacific Ry. Co. v. Abilene Cotton Oil Co., 204 U. S. 426, 27 Sup. Ct. 350, 51 L. Ed. 553, 9 Ann. Cas. 1075, we held that the question of the reasonableness of a freight tariff was one which was addressed originally and exclusively under the Act to regulate commerce to the Interstate Commerce Commission; that this must necessarily be true from the nature of the enterprise involved. The fixing of a just rate for a common carrier for the transportation of persons and property in interstate commerce involves the exercise of a legislative discretion. In the National Pole Co. Case, supra, this court said:

"Congress directly and in the first instance might have inquired into the character and value of the particular transportation service now under investigation by the Commission and have named the rate therefor in a statute. But, with the increasing complexities of human activities, it was impossible to cover the details of rate-making (and the same is true of many other subjects) by specific statutes, and so the board or commission form of legislation was used; that is, Congress declared the public policy and fixed the legal principles that were to control, and charged an administrative body with the duty of ascertaining within particular fields from time to time the facts on which the legal principles established by Congress would be brought into play. * * * But since the congressional prohibition of unjust rates cannot, by the terms of the act, be effective against a particular published rate, although unjust, until the Commission has investigated the service in question and has established the standard of justness for all shippers who use that service, the action of the Commission in the regulation of rates is quasi legislative—it converts the actual legislation from a static into a dynamic condition."

And this view has found lodgment in numerous expressions of the Supreme Court upon this same proposition many times since. When plaintiff first felt aggrieved he sought his relief by the proper procedure—by filing his complaint with the Interstate Commerce Commission. Skinner & Eddy Corporation v. United States, 249 U. S. 557, 39 Sup. Ct. 375, 63 L. Ed. 772, and cases cited. And the finding of the Commission upon this subject was conclusive. Skinner & Eddy Corporation v. United States, supra.

Had the schedules filed in 1912 been found by the Commission to carry unreasonable and oppressive rates in violation of law, and the amount of damages sustained by reason of defendants charging and collecting the rates provided in the schedules, a different case would

be presented. In such case a judicial question would be involved which might be adjudicated in a court as well as before the Commission; but inasmuch as the Commission took the contrary view, holding that the rates provided in the schedules and charged by the defendants and collected from the plaintiff for the shipments complained of were reasonable, a different situation arises.

Congress in the passage of the Act to regulate commerce (Comp. St. § 8563 et seq.) having provided the rules of law applicable to freight charges and the administrative board—Interstate Commerce Commission—having determined the rates fixed by the schedules complained of were within the statute, the plaintiff has no other alternative than to regard the rates as reasonable and as having been well established. Interstate Commerce Commission v. Illinois Central R. R. Co., 215 U. S. 452, 30 Sup. Ct. 155, 54 L. Ed. 280; Proctor & Gamble v. United States, 225 U. S. 282, 36 Sup. Ct. 761, 56 L. Ed. 1091; Kansas City Southern Ry. Co. v. United States, 231 U. S. 423, 34 Sup. Ct. 125, 58 L. Ed. 296, 52 L. R. A. (N. S.) 1; Interstate Commerce Commission v. Atchison, Topeka & Santa Fé R. R. Co., 234 U. S. 294, 34 Sup. Ct. 814, 58 L. Ed. 1319.

[4] The rates in defendants' tariff schedules complained of in plaintiff's declaration having been found, by the Interstate Commerce Commission, to be reasonable, are to be treated as though they were embodied in a statute, binding as such upon both defendants and plaintiff alike. Pennsylvania Ry. Co. v. International Coal Co., 230 U. S. 184–196, 33 Sup. Ct. 893, 57 L. Ed. 1446, Ann. Cas. 1915A, 315.

The only element of damage alleged in plaintiff's declaration being predicated upon the payment of freight rates which the plaintiff was required by law to pay and the defendants were required by law to collect, it is apparent that the special matter set out in the several pleas did present a complete defense to the action. It was therefore unnecessary to adjudicate the question as to whether or not the defendants were guilty of the crime of conspiracy under the Anti-Trust Law. If no provable damages were sustained by the plaintiff, there can be no recovery.

The demurrers were properly overruled, and the judgment of the District Court will accordingly be affirmed.