### JACK v. ARMOUR & CO. et al.

(Circuit Court of Appeals, Eighth Circuit. July 20, 1923.)

No. 6207.

**I. Courts ⚫═347—Sufficiency of petition may be attacked by motion to strike.**

Under Comp. St. Neb. 1922, § 8673, authorizing motions to strike pleadings from the files, as construed by the Supreme Court of the state, and which applies in actions at law in the federal courts in the state, a petition may be stricken on motion if it fails to state a cause of action.

**2. Monopolies 28—Petition in action for damages under Anti-Trust Act held not to state cause of action.**

In an action under Sherman Anti-Trust Act, § 7 (Comp. St. § 8829), authorizing recovery for violation of the act by "any person who shall be injured in his business or property," a petition which alleged a combination and conspiracy by defendants in violation of the act to monopolize the business of buying and selling live stock and the distribution of fresh meats, and that by reason thereof plaintiff had been injured in his business of raising, buying and selling live stock in the amount of, $25,000, but which failed to allege any facts showing in what manner or to what extent he was injured by the alleged acts of defendant, *held* not to state a cause of action.

In Error to the District Court of the United States for the District of Nebraska; Thomas C. Munger, Judge.

Action at law by John W. Jack against Armour & Co. and others. Judgment for defendants, and plaintiff brings error. Affirmed.

F. L. Bollen, of Lincoln, Neb. (C. A. Sorensen, of Lincoln, Neb., on the brief), for plaintiff in error.

J. A. C. Kennedy, of Omaha, Neb. (Kennedy, Holland, DeLacy & McLaughlin, of Omaha, Neb., on the brief), for defendants in error.

Before SANBORN, Circuit Judge, and BOOTH and FARIS, District Judges.

FARIS, District Judge. Plaintiff in error, as plaintiff below, sued defendants in error, at law, for treble damages averred to have accrued to him from defendants, by reason of alleged violations by defendants, of the provisions of the Act of July 2, 1890, commonly called the "Sherman Anti-Trust Act" (Comp. St. §§ 8820–8823, 8827–8830), and the amendments thereto. The trial court sustained a motion of defendants to strike plaintiff's petition from the files, and he brings error.

[1] But two questions are presented. One of these arises in limine, and questions the correctness of the court's action in striking plaintiff's petition from the files. The other question is whether, conceding the correctness of the procedure, the petition before the court was insufficient as a matter of law. It is elementary that the federal District Courts in civil actions at law follow the practice and procedure of the states in which such courts are held. If the action taken below, in striking the plaintiff's petition from the files, was warranted by the Civil Code of Practice of the State of Nebraska, as that Code is interpreted by the Supreme Court of Nebraska, then it follows that the practice here adopted by the trial court was proper.

In a late case decided by the Supreme Court of Nebraska (Ferson v. Armour & Co., 192 N. W. 125) it was said:

"Plaintiff's fourth petition not only violated established rules, but it was filed in contempt of court. In a situation like this defendants are not limited to the statutory method of attacking the petition by motion to strike out improper matter *or to make allegations more definite and certain.* (Comp. Stat. 1922, § 8673.) It may be stricken from the files, if fatal defects extend to the pleading as a whole, or if plaintiffs in filing it ignored an order of the court."

The section of the Civil Code of Nebraska, cited and construed by the Supreme Court of that state and here relied on as warranting the striking of the petition from the files, reads thus:

"Motions to strike pleadings and papers from the files may be made with or without notice as the court or judge shall direct." Section 8673, Comp. Stats. of Nebraska of 1922.

While, of course, the above language of the Nebraska statute settles the question of the power of the court to strike a pleading from the files, it does not settle the question as to the conditions and situation in which the use of the power may be properly exercised. The Supreme Court of Nebraska does, however, settle that question by saying that a petition "may be stricken from the files if fatal defects extend to the pleading as a whole."

It follows then that if fatal defects extend to the petition of plaintiff as a whole in the case at bar, the action of the trial court was warranted. The language used by the Supreme Court of Nebraska seems to mean that if no cause of action is stated in the petition, it may properly be stricken from the files. A similar, or at least analogous, practice is common in other Code states. Motions to strike out a pleading are often used to perform the office of a demurrer, and when so used are regarded as demurrers, Shohoney v. Railroad, 231 Mo. loc. cit. 148, 132 S. W. 1059, Ann. Cas. 1912A, 1143.

It follows then that the point of procedure raised is a mere corollary of the other question mooted on the record. If upon an examination of that question it shall develop that the petition was not fatally defective, then it was error to strike it from the files. Upon the view, touching the petition, which was taken by trial court, that is, that it was fatally defective, he committed no error in procedure in striking it from the files. So, the question is: was it fatally bad?

[2] The petition in this case has at least the merit of brevity, which greatly lightens the labor of analysis, and the statement of its salient allegations. No point is made as to jurisdictional averments, so far as regard diversity of citizenship and the amount in controversy. Following these merely jurisdictional averments, it is alleged that the action is brought, as already forecast, under the provisions of the Sherman Anti-Trust Act and the Clayton Act (38 Stat. 730); that defendants are engaged in the slaughter of cattle, hogs, sheep, and calves, and in the distribution of dressed meats to butchers, and through the latter to consumers; that defendants, on the information and belief of plaintiff, have since the year 1900 conspired, and from that year down to the time of the bringing of this action have been engaged in a conspiracy, to maintain a monopoly, in restraint of trade, in the business of buying and slaughtering live stock, and in preparing the carcasses thereof for distribution and consumption; that defendants in violation of the Act of July 2, 1890, and the amendments thereto, and in order to restrain competition in the purchase of live stock, have engaged in a combination and conspiracy among themselves in which they intend to continue "for directing and requiring their respective purchasing agents" in the several live stock markets, where defendants buy live stock and to which live stock is shipped by the producers for com-

petitive sale, to refrain from bidding against each other in the purchase of such live stock, thus and thereby compelling the owners of such stock to sell same at prices less than such owners would receive if the bidding were competitive. It is further alleged that defendants have combined and conspired to "bid up" the prices of live stock for a few days in the markets and stockyards, thereby inducing shippers to make heavy shipments, and when such shipments have been thus induced and the markets congested, to refrain from "bidding up" such live stock, "thereby obtaining such live stock at prices much less than it would bring in the regular way of trade."

It is further alleged that defendants, in order to restrain competition among themselves in such trade and commerce, and in order to monopolize the same, have combined and conspired arbitrarily to lower and fix prices and to maintain uniform prices, at which they will sell their products to dealers and consumers. The manner in which such prices are fixed, agreed on, and maintained is thereupon pleaded; but for reasons which are fairly obvious, it is not necessary to state these allegations. These facts, even if they exist, are of no particular concern to plaintiff, or to his case.

It is then averred that defendants are, and for years have been, in combination and conspiracy with each other, with the railroad companies, and with persons unknown, to obtain a monopoly in the supply and distribution of fresh meats, throughout the United States and foreign countries, and that to this end defendants will artificially restrain such commerce and "put in force unreasonable and arbitrary regulations for the conduct of their own and each others' business effecting the same" from the place of rearing such stock, to the final distribution of defendants' products to the consumer.

It is further alleged that defendants refrain from honest bidding against each other, and that in the principal live stock markets of the United States, they divide and parcel out by fixed percentages what each one of defendants shall purchase, and that defendants, in furtherance of their common purpose to maintain a monopoly in the slaughter of live stock and in the distribution of meats, have purchased, or secured control of a majority of the large stockyards of the United States, with the purpose and intent and with the effect of discouraging and suppressing the establishment and growth of such independent packing companies as might be in existence.

This is a fair résumé of the entire petition, barring iteration and reiteration of the intent of defendants, that is, that the acts charged were in contravention of the Act of July 2, 1890, and that they were done in furtherance of a combination and conspiracy in restraint of trade and commerce, and barring the averment of the business in which plaintiff is engaged.

In conclusion, it is averred that by reason of the monopoly in restraint of trade, created and maintained by defendants as set out in the petition, plaintiff has been injured in his business in the sum of $25,000, for which he prays, and that such damages may be trebled, and that he have judgment against each of the defendants for $75,-000 and his costs.

Beyond alleging that he is engaged in the business of raising, buying, and selling cattle and hogs for profit, plaintiff nowhere avers his interest in the action he brings. He does not aver where, or in what markets, he either buys or sells the live stock in which he deals. He nowhere sets out the nature or extent, or manner in which the alleged unlawful acts of defendants have injured or affected him personally. And he sues for himself personally, and not in an official capacity.

The statute on which he relies provides, in substance, that any person who shall be injured in his business or property by reason of the doing by any other person or corporation of the acts and things prohibited by other sections of the Sherman Anti-Trust Act may sue therefor and recover threefold damages for the injuries so sustained. Section 7, Act of July 2, 1890, 26 Stat. 210 (Comp. St. § 8829).

But before a recovery can be had by a mere private person under this section, there must at least be an allegation of the manner, nature, extent, or amount of the injury sustained by such private person. The question whether the United States could sue upon such a showing as here made is not involved and is neither important nor decisive, and the cases cited by plaintiff are not in point. If plaintiff may sue for $75,-000, and recover such sum, or even any respectable modicum thereof, simply because he happens to be engaged in raising, buying, and selling live stock, it would necessarily follow that every person in the United States engaged in a business similar to plaintiff could likewise sue and recover an equal sum. Obviously the mere statement of the proposition discloses its unsoundness. On both reason and authority, no one can maintain an action under the provisions of section 7 of the Sherman Anti-Trust Act, unless he has suffered an injury in his business or property by proximate reason of the violation by the defendant or defendants whom he sues, of some of the prohibitions contained in that act; for this is what the act says in plain and simple language. It is needless to say that it has been so construed by the courts. Locker v. American Tob. Co., 218 Fed. 447, 134 C. C.A . 247; American, etc., Co. v. O'Halloran, 229 Fed. 77, 143 C. C. A. 353; American Banana Co. v. United Fruit Co., 213 U. S. 347, 29 Sup. Ct. 511, 53 L. Ed. 826, 16 Ann. Cas. 1047.

So far at least as concerns private persons, a mere conspiracy is not actionable, absent overt manifestations thereof, by which injury is inflicted upon the business or property of him who sues, or mayhap, in a proper case, upon his person. Darrow v. Briggs, 261 Mo. 244, 169 S. W. 118; Commercial, etc., Co. v. Shoemaker, 63 Neb. 173, 88 N. W. 156; Porter v. Mack, 50 W. Va. 581, 40 S. E. 459.

It is obvious that at least in the absence of the allegations mentioned, the petition in this case was fatally defective, and the trial court did not err in striking it from the files. This, in the last analysis, is the only question in the case; the first contention being, as seen already, a mere corollary of the second. No necessity arises to point out other defects, if such exist; so we content ourselves with passing upon the single point mooted, leaving other questions to be disposed of as they shall arise.

It follows that the case ought to be affirmed, which accordingly is ordered.