OKLAHOMA PORTLAND CEMENT CO. et al. v. STATE et al.

No. 12945—Opinion Filed Nov. 28, 1922.

(Syllabus.)

**Monopolies — Unlawful Combinations in Restraint of Trade—Facts Justifying Action by the State.**

Sections 8220 and 8235 of Revised Laws 1910 provide:

"Every act, agreement, contract, or combination in the form of trust, or otherwise, or conspiracy in restraint of trade or commerce within this state, which is against public policy, is hereby declared to be illegal."

"Whenever any business, by reason of its nature, extent, or the existence of a virtual monopoly therein, is such that the public must use the same, or its services, or the consideration by it given or taken or offered, or the commodities bought or sold therein are offered, or taken by purchase or sale in such a manner as to make it of public consequence or to affect the community at large as to supply, demand or price or rate thereof, or said business is conducted in violation of the first section of this article, said business is a public business, and subject to be controlled by the state, by the Corporation Commission or by an action in any district court of the state, as to all of its practices, prices, rates and charges. And it is hereby declared to be the duty of any person, firm or corporation engaged in any public business to render its services and offer its commodities, or either, upon reasonable terms without discrimination and adequately to the needs of the public, considering the facilities of said business."

Record examined in this cause, and held, that the Oklahoma Portland Cement Company and the Dewey Portland Cement Company, respondents, in distributing their commodity, Portland cement, exclusively through local retail dealers without any agreement between the respondents fixing the price at which their retail dealers should sell said commodity to the ultimate consumer, no monopoly being shown or unlawful agreement, said commodity being an article of ordinary commerce, the state is not warranted through the Corporation Commission in regulating the manner of distribution of said commodity by the respondents, and that the order of the commission be reversed and the petition of the complainant dismissed.

Appeal from the Corporation Commission.

Proceeding by R. G. Marriott, complainant, against the Oklahoma Portland Cement Company and the Dewey Portland Cement Company, respondents, to regulate the manner of distribution of the commodity known as Portland cement manufactured in the State of Oklahoma by the respondents. Order entered in favor of the complainant. Respondents appeal. Order reversed, and petition of complainant dismissed.

Geo. A. Henshaw and A. Carey Hough, for plaintiffs in error.

E. S. Ratliff, for Corporation Commission.

KENNAMER, J. The Oklahoma Portland Cement Company and the Dewey Portland Cement Company prosecute this appeal to reverse an order of the Corporation Com-

mission, entered on the 16th day of December, 1921, requiring said cement companies to sell the commodity known as Portland cement directly to individual and private users thereof when purchased in carload lots.

The evidence introduced on the hearing of this proceeding before the Corporation Commission, pursuant to a petition filed by R. G. Marriott, complainant, briefly discloses, in substance, the following material facts:

That the two cement companies appearing here as plaintiffs in error are the only manufacturers of cement within the state of Oklahoma, one plant being located at Ada, Okla., and the other at Dewey, Okla.; that these two plants manufacture cement and sell the commodity directly to dealers and do not sell cement by retail; that the two manufacturing companies only distribute their product through retail dealers, and not directly to the consumer of their product.

It appears from the record that there are twelve manufacturing plants of cement located in adjoining states that ship cement into Oklahoma, and sell the same to retail dealers. The evidence fails to disclose that any complaint is made against the two cement companies for charging too high a price for the product distributed. The evidence is clear that the product, Portland cement, is, at the present time, of almost universal use in the construction of roads, streets, sidewalks, and of nearly every permanent structure in the way of public improvements.

It appears that during the past few years the two companies have adopted the practice, through traveling salesmen, representing said companies, of soliciting and taking orders for cement in carload lots, shipping the same either direct to the consumer or contractor, or to a local representative in the community, where an order is secured, and that in such transactions there is added to the price of the product a charge which is shown from the evidence to amount to from ten cents per barrel to fifteen cents per barrel, except in one or two cases, which the consumer or contractor is required to pay to the local dealer of cement in the community represented by such local dealer. It is clear by this method the two cement companies aid their local dealers in making sales.

Counsel for the defendants in error state that this is the practice particularly complained of in this proceeding.

It is argued by counsel for the Corporation Commission that under section 8235, Revised Laws of 1910, the Corporation Commission is vested with jurisdiction to enter the order complained of here, and said section of the statute authorizes the order made under the evidence introduced on the hearing before the commission. The section reads as follows:

"Whenever any business, by reason of its nature, extent, or the existence of a virtual monopoly therein, is such that the public must use the same, or its services, or the consideration by it given or taken or offered, or the commodities bought or sold therein are offered or taken by purchase or sale in such a manner as to make it of public consequence or to affect the community at large as to supply, demand or price or rate thereof, or said business is conducted in violation of the first section of this article, said business is a public business, and subject to be controlled by the state, by the Corporation Commission or by an action in any district court of the state, as to all of its practices, prices, rates and charges. And it is hereby declared to be the duty of any person, firm or corporation engaged in any public business to render its services and offer its commodities, or either, upon reasonable terms without discrimination and adequately to the needs of the public, considering the facilities of said business."

Section 8220, Revised Laws of 1910, reads as follows:

"Every act, agreement, contract, or combination in the form of trust, or otherwise, or conspiracy in restraint of trade or commerce within this state, which is against public policy, is hereby declared to be illegal."

The order of the commission not only required the cement companies to furnish their product directly to the users of such commodity, but also directed the companies to desist from the practice of refusing to supply the commodity known as Portland cement to individual and private users thereof, when such commodity was purchased or ordered in carload lots, where such purchaser was willing to pay cash or ordered the same shipped with draft attached to bill of lading for collection, such order being accompanied by certified check to cover freight.

Counsel for the complainant and commission contend that the business of the companies affected by the order comes within the terms of section 8235, supra. It is admitted by counsel for the commission that no effort was made upon the part of the complainant to show a legal or actual mon-

opoly. It is contended, by reason of the nature or extent of the business transacted within the state by the cement companies, that they have a virtual monopoly of the cement, and that the manner of distributing their commodity is of such consequence as to affect the community at large as to the supply, demand, and price thereof. The contention of counsel for the complainant and commission, concisely stated, is that the two cement companies have a virtual monopoly in the distribution of cement within the state of Oklahoma.

An examination of the order entered by the commission shows that the commission based its order entirely upon its findings of fact; that the two companies have a virtual monopoly in the distribution of cement within the state. The finding of fact in part read as follows:

"No effort has been made in this hearing to prove a contention by agreement in restraint of trade, but we are basing this order entirely upon the nature and extent of the business and the fact of the existence of a virtual monopoly, together with the public consequence which attaches to the method and manner of distribution of the commodity to the users thereof."

Upon a careful examination of the evidence in the record, we are unable to find any evidence in the record that justifies the conclusion that the plaintiffs in error have any monopoly whatever upon the sale and distribution of cement within the state of Oklahoma. In fact, the evidence discloses that the two companies manufacturing cement within the state of Oklahoma are forced to sell their product in competition with twelve other companies located in adjoining states, over which the Corporation Commission has no jurisdiction, and, in fact, no complaint is made by the complainant in his petition filed that an exorbitant or unreasonable price is being charged the consumers of cement in the state of Oklahoma, but the complaint and order of the commission only attempt to regulate the manner in which the two manufacturers of cement may distribute their product in this state.

The rule of law that a manufacturer has the right to select his own agencies of sale and distribution is well established by many authorities: Great Atlantic & Pacific Tea Co. v. Cream of Wheat Co., 227 Fed. 46-48 (2 C. C. A., 1915); Greater New York Film Rental Co. v. Biograph Co., 203 Fed. 39, 40; U. S. v. Colgate, 250 U. S. 300; Cudahy Packing Co. v. Frey & Sons, 261 Fed. 65, 67 (4 C. C. A. July, 1919) 65 L Ed. Adv. Ops.

523; Welch Grape Juice Co. v. Frey & Sons, Inc., 261 Fed. 68 (4 C. C. A., July, 1919, certiorari denied, 251 U. S. 551); Baran v. Goodyear Tire & Rubber Co., 256 Fed. 571, 572; Virtue v. Creamery Package Co., 227 U. S. 8; American Sea Green Slate Co. v. O'Haloran, 229 Fed. 77; Locher v. American Tobacco Co., 218 Fed. 447; Dissenting opinion by Mr. Justice Holmes in Dr. Miles Medical Co. v. Park & Sons Co., 220 U. S. 373, 411.

The rule, supra, is universally recognized by the authorities that where the sale of a manufactured article, by the manufacturer thereof, to local dealers exclusively, is made without an agreement between the different manufacturers of the article fixing the price at which the same shall be sold by such dealers to the ultimate consumer, the right to distribute in such manner will not be interfered with by the state. We know of no authority that holds that the manufacturer of an article does not have this right, and especially where the manufacturers involved do not make or control all the entire distribution of such commodity. Unquestionably a manufacturer of a commodity would have the right to select his distributing agencies where the article is one of ordinary commerce, produced by numerous persons.

Under section 8235, supra, of the statute, the state is only warranted in regulating the business of two companies engaged in the manufacture of cement when by reason of the nature and extent of such business, or the existence of a virtual monopoly therein, the public is forced to use the services of such manufacturers in furnishing their commodity.

We are unable to find any evidence that reasonably supports the conclusion that the people of Oklahoma are bound to use the commodity manufactured and distributed by the plaintiffs in error in the instant case. The commodity of cement is one of ordinary commerce, which may be purchased in numerous places. The statute, however, does authorize the state to interfere with the distribution of commodities when the same are bought or sold or taken by purchase or sale in such a manner as to constitute a virtual monopoly, or to affect the community at large, as to supply, demand, price, or rate thereof.

It is plain from the language used in the statute that, before the state is justified in interfering with the sale or distribution of

commodities, it must be established that the distributor is in a position to control the price or supply of such commodity, for, without being able to control such supply or price, no monopoly would exist, nor would such distributor be in a position to affect the supply of such commodity in a way that would affect the community at large, as contemplated by the statute.

It is obvious from reading the statute it was not the intention of the Legislature to attempt to regulate the distribution of a commodity of ordinary commerce over which the distributor could neither control the price nor the supply thereof.

The sale of a manufactured article, by the manufacturer thereof, to local dealers exclusively, without an agreement between the different manufacturers of said article fixing the price at which same shall be sold by such dealers to the ultimate consumer, and especially where the particular manufacturers involved do not make or control all of said commodity, but the same is an ordinary article of commerce, which anyone with the proper facilities may manufacture or produce, and such article is, in fact, produced by numerous other persons or concerns manufacturing the same—such a selling method or arrangement does not constitute an unlawful agreement in restraint of trade or a virtual monopoly, either at common law or under the statutes of this state.

It appears from the evidence introduced on this hearing before the commission that 70 per cent. or more of the cement used in Oklahoma is sold and distributed through local retail dealers in less than carload lots. In this situation, it is plain that the enforcement of the order requiring only two of fourteen companies selling cement in Oklahoma to sell directly to consumers would likely result in two companies losing all their business distributed through retail dealers, as retail dealers would not buy from manufacturing companies that sell directly to their customers. We conclude, after a careful review of the record in this proceeding, that the evidence is insufficient to justify the order, and that its enforcement imposes an unreasonable burden upon the respondents.

The order is reversed and the petition of complainant dismissed.

HARRISON, C. J., and JOHNSON MILLER, and NICHOLSON, JJ., concur.